

**EXHIBIT**

tabbies®

A

City of Richmond Circuit Court
Civil Division
400 N. 9th St.
Richmond, VA 23219

Summons

To:   MDA LENDING SOLUTIONS INC.
      PRIVATE PROCESS SERVICE                    Case number: 760CL10001448-00
      C/o CSC 11 S. 12th St.
      Richmond, VA 23219.

The party upon whom this Summons and the attached Complaint are served is hereby
notified that unless within 21 days after such service, response is made by filing
in the clerk's office of this court a pleading in writing, in proper legal form,
the allegations and charges may be taken as admitted and the court may enter an
order, judgment, or decree against such party either by default or after hearing
evidence.

Appearance in person is not required by this Subpoena.

Done in the name of the Commonwealth of Virginia on, Thursday, March 25, 2010.

Clerk of Court: Bevill M. Dean

                          By: _____ _Catherine White_ _____
                                       (Clerk/Deputy Clerk)

      Instructions:

Attorney's name: JAMES E. KANE
                 804-225-9500

V I R G I N I A :

### IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

CHURCH HILL PLACE INVESTMENTS, LLC,  )
a Virginia limited liability company      )
                                   )
            Plaintiff,          )
                                   )
v.                               )     Case No. _____
                                   )
MDA LENDING SOLUTIONS, INC.,      )
a Delaware corporation              )
                                   )
            Defendant.        )

### VERIFIED COMPLAINT

COMES NOW, the Plaintiff, Church Hill Place Investments, LLC ("Church Hill Place"), by counsel, and as and for its Complaint, states as follows:

### PARTIES, VENUE AND JURISDICTION

1.    Church Hill Place is a Virginia limited liability company that does business in the City of Richmond, Virginia and is an affiliate of United Leasing Corporation, a Virginia corporation ("United Leasing").

2.    Defendant MDA Lending Solutions, Inc. ("MDA") is a Delaware corporation with a registered office and registered agent located in the City of Richmond, Virginia.

3.    This Court has jurisdiction pursuant to Va. Code Ann. § 8.01-328.1(A)(1) and (2), as the cause of action herein arises out of the Defendant transacting business in Virginia and contracting to supply services or things in Virginia.

4.    Venue is proper in the City of Richmond pursuant to Va. Code Ann. § 8.01-262(2) as the Defendant's registered office and agent are located in the City of Richmond.

## FACTS

5.      The allegations contained in paragraph 1 through 4 are hereby restated and incorporated herein by this reference.

6.      Church Hill Place is engaged in the business of financing small businesses using a lease structure.

7.      In or about August, 2008, Church Hill Place was evaluating a lease proposal to finance a business in Norcross, Georgia known as Hong Kong Market, Inc. ("Lessee").

8.      In order to approve the transaction, Church Hill Place required additional collateral to secure the lease obligations.  The Lessee offered as additional collateral a parcel of real estate located in Fulton County, Georgia known as 3602 Browns Mill Road, Atlanta, Georgia 30354 ("Property").

9.      In or about August, 2008 Church Hill Place engaged the services of MDA to perform a title search on the Property.

10.     On or about September 2, 2008, MDA provided Church Hill Place with a title search report on the Property indicating that the Property had no mortgages, deeds of trust or other liens thereon.  A copy of said title search report is attached hereto as Exhibit "A" and is incorporated herein by this reference ("Title Report").

11.     In reliance on Title Report, on or about September 25, 2008 Church Hill Place entered into an equipment lease agreement with the Lessee whereby Church Hill Place loaned the Lessee $1,100,000.00 under a lease structure.  A copy of the equipment lease is attached hereto as Exhibit "B" and is incorporated herein by this reference ("Lease").

2

12.     The Lease was secured by a Security Deed and Agreement on the Property, a copy of which is attached hereto as Exhibit "C" and is incorporated herein by this reference ("Deed of Trust").

13.     A default has occurred under the Lease and Church Hill Place has, in accordance with the terms of the Lease, accelerated all sums due thereunder.  The accelerated balance due is $1,576,834.01, plus late charges, costs and $315,366.80 attorney fees.

14.     In or about January, 2010, Church Hill Place referred this matter to counsel to commence legal proceedings and to foreclose on the Property.  On or about January 12, 2010 Church Hill Place ordered an updated title search report from MDA on the Property.

15.     On or about January 28, 2010 provided Church Hill Place with a title search report indicating that there was a mortgage on the Property recorded on June 26, 2006 in favor of Suntrust Bank-SD in the amount of $800,000.00.  A copy of said title search report is attached hereto as Exhibit "D" and is incorporated herein by this reference.

16.     Had Church Hill Place been aware of the prior Suntrust mortgage in September 2008, it would not have entered into the Lease.

## COUNT I
### (Breach of Contract)

17.     The allegations contained in paragraph 1 through 16 are hereby restated and incorporated herein by this reference.

18.     Pursuant to its engagement with Church Hill Place, MDA had a duty to accurately perform a title search of the Property and to accurately report the findings of said search to Church Hill Place.

3

19.    MDA breached its contractual duty with Church Hill Place by failing to accurately discover and report the existing mortgage held by Suntrust on the Property to Church Hill Place.

20.    As a result of the aforesaid breach by MDA, Church Hill Place has been damaged in the amount of $1,576,834.01, plus late charges, costs and $315,366.80 attorney fees.

## COUNT II
### (Breach of Warranty)

21.    The allegations contained in paragraph 1 through 20 are hereby restated and incorporated herein by this reference.

22.    Pursuant to the terms of the Title Report, MDA warranted to Church Hill Place that the report had "been accurately reported from the public record sources available as of the effective date of this report" ("Warranty").

23.    On or about November 22, 2006, Transunion Settlement Solutions, Inc. a predecessor in interest to MDA entered into a Real Estate Settlement Services Purchase Agreement with United Leasing, a copy of which is attached hereto as Exhibit "D" and is incorporated herein by this reference ("Agreement").

24.    Pursuant to the terms of the Agreement, the limitation on the amount of the Warranty is the amount of the actual damages.

25.    The terms of the Agreement are applicable to affiliates of United Leasing, including Church Hill Place.

4

### PRAYER FOR RELIEF

WHEREFORE, Church Hill Place Investments, LLC prays for judgment against MDA

Lending Solutions, Inc. in the amount of $1,576,834.01, plus late charges, costs and $315,366.80

attorney fees, plus such other relief as the Court may deem just and appropriate.

CHURCH HILL PLACE INVESTMENTS, LLC

By: _____
                                    Counsel

James E. Kane (VSB #30081)
KANE, PAPA & ORTIZ
1313 East Cary Street
Richmond, VA  23219
(804) 225-9500 (phone)
(804) 225-9598 (fax)
*Counsel for Plaintiff*

SEARCH Report for 0808   94343A - MDA Lending Solutions                Page 1 of 3

# TITLE SEARCH REPORT



EXHIBIT
A

| Lender: | Q18764 | | Report Date: | 09/02/2008 |
|---|---|---|---|---|
| Application #: | Newmarket | | Borrower: | New Market Realty Inc. |
| Order ID: | 080829-94343A | | Requested | |
| Requested By: | Tia Wiggins | Fax:804-730-1179 | Address: | 3602 Browns Mill Road |
| Effective Date: | 08/09/2008 | | | ATLANTA, GA 30354 |
| | | | | FULTON County |

## Current Ownership

LY MINH TIEU

## Deed Information Section 1

| Grantor(s) | | | | | |
|---|---|---|---|---|---|
| STEIN REAL ESTATE COMPANY LLC | | | | | |
| Grantee(s) | | | | | |
| LY MINH TIEU | | | | | |
| Type of Deed | | | | | |
| WARRANTY | | | | | |
| Manner of Title | | | | | |
| None Stated | | | | | |
| Document Number | Consideration $10.00 | | Township ATLANTA | | |
| Vesting Y | Book 40150 | | Page 504 | Instrument Date 05/23/2005 | Recording Date 06/03/2005 |
| Other Deed Info | | | | | |
| MANNER OF TITLE NOT STATED | | | | | |

## Deed Information Section 2

| Grantor(s) | | | | | |
|---|---|---|---|---|---|
| STEIN REAL ESTATE COMPANY LLC | | | | | |
| Grantee(s) | | | | | |
| LY MINH TIEU | | | | | |
| Type of Deed | | | | | |
| QUIT CLAIM | | | | | |
| Manner of Title | | | | | |
| None Stated | | | | | |
| Document Number | Consideration $1.00 | | Township ATLANTA | | |
| Book 40150 | | | Page 501 | Instrument Date 05/23/2005 | Recording Date 06/03/2005 |
| Other Deed Info | | | | | |
| MANNER OF TITLE NOT STATED | | | | | |

## Tax Information Section 1

| Tax ID Number | | | | |
|---|---|---|---|---|
| 140063LL0634 | | | | |
| Property Type | Parcel | | Exempt N | Exempt Amount |
| Exempt Type | | | | |
| Total Assessment $1,275,700.00 | Land $279,900.00 | | Improvements $995,800.00 | Other |

| Tax Amount $20,934.24 | Tax Year 2008 | Paid Thru 10/15/2007 | Due Date 10/15/2008 |
|---|---|---|---|
| Status CURRENT | | | |
| Delinquent Tax Year | | Delinquent Tax Amount | |
| Other Information PROPERTY TYPE NOT STATED | | | |

**Misc**

GRANTOR VERIFIED PER DEED

NO OPEN MORTGAGES/DEEDS OF TRUST FOUND

NO COUNTY LEVEL LIENS/JUDGEMENTS TO REPORT

**Legal Description**

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN THE CITY OF ATLANTA, IN LAND LOT 63 OF THE 14TH DISTRICT OF FULTON COUNTY, GEORGIA, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: TO FIND THE TRUE POINT OF BEGINNING, BEGIN AT THE POINT OF INTERSECTION OF THE SOUTHEASTERLY RIGHT-OF-WAY LINE OF BROWNS MILL ROAD (A VARIABLE RIGHT-OF-WAY) WITH THE SOUTH LINE OF LAND LOT 66, SAID DISTRICT; RUNNING THENCE NORTHEASTERLY ALONG THE SOUTHEASTERLY RIGHT-OF-WAY LINE OF BROWNS MILL ROAD, 1,242.1 FEET TO A REBAR FOUND; RUNNING THENCE SOUTH 39 DEGREES 15 MINUTES 15 SECONDS EAST, 15.53 FEET TO A REBAR FOUND ON THE NORTHEASTERLY LINE OF PROPERTY NOW OR FORMERLY OWNED BY SELIG ENTERPRISES, INC., WHICH REBAR MARKS THE TRUE POINT OF BEGINNING; FROM THE TRUE PONT OF BEGINNING THUS ESTABLISHED, RUN THENCE NORTHEASTERLY ALONG THE SOUTHEASTERLY RIGHT-OF-WAY LINE OF BROWNS MILL ROAD, AND FOLLOWING THE ARC OF A CURVE TO THE LEFT (SAID ARC HAVING A RADIUS OF 3,848.72 FEET AND BEING SUBTENDED BY A CHORD LINE HAVING A BEARING OF NORTH 65 DEGREES 39 MINUTES 33 SECONDS EAST AND A LENGTH OF 405.57 FEET), AN ARC DISTANCE OF 405.76 FEET TO A REBAR FOUND ON THE NORTHWESTERLY LINE OF PROPERTY NOW OR FORMERLY OWNED BY FRANK LOIS, TRUSTEE; MIMING THENCE SOUTH 25 DEGREES 00 MINUTES 15 SECONDS EAST, ALONG THE SOUTHWESTERLY LINE OF SAID FRANK LOIS, TRUSTEE PROPERTY, 474.89 FEET TO A REBAR SET; RUNNING THENCE ALONG THE ARC OF A CURVE TO THE LEFT (SAID ARC HAVING A RADIUS OF 664.18 FEET AND BEING SUBTENDED BY A CHORD LINE HAVING A BEARING OF SOUTH 85 DEGREES 55 MINUTES 45 SECONDS WEST AND A CHORD LENGTH OF 299.60 FEET), AN ARC DISTANCE OF 302.20 FEET TO A REBAR SET; RUNNING THENCE SOUTH 65 DEGREES 10 MINUTES 45 SECONDS WEST, 30.00 FEET TO A REBAR SET AT THE SOUTHEASTERLY CORNER OF THE AFOREMENTIONED SELIG ENTERPRISES, INC. PROPERTY; RUNNING THENCE NORTH 39 DEGREES 25 MINUTES 15 SECONDS WEST ALONG THE NORTHEASTERLY LINE OF SAID SELIG ENTERPRISES, INC. PROPERTY, 384.47 FEET TO THE REBAR FOUND ON THE SOUTHEASTERLY RIGHT-OF-WAY LINE OF BROWNS MILL ROAD, WHICH MARKS THE TRUE PONT OF BEGINNING; AND BEING A TRACT OR PARCEL OF LAND CONTAINING 3.268 ACRES, HAVING A ONE-STORY BRICK AND STUCCO WAREHOUSE BUILDING LOCATED THEREON KNOWN AS NO. 3602 BROWNS MILL ROAD, ACCORDING TO THE PRESENT SYSTEM OF NUMBERING BUILDINGS IN THE CITY OF ATLANTA, FULTON COUNTY, GEORGIA, AND BEING MORE PARTICULARLY SHOWN ON AND DESCRIBED IN ACCORDANCE WITH A PLAT OF SURVEY PREPARED FOR LY MINH TIEU, THE SUMMIT NATIONAL BANK AND SECURITY UNION TITLE INSURANCE COMPANY BY MCCLUNG SURVEYING SERVICES, INC., BEARING THE SEAL AND CERTIFICATION OF MICHAEL R. NOLES, GEORGIA REGISTERED LAND SURVEYOR NO. 2646, DATED MAY 11, 2005. TAX ID: 140063LL0634.

Note: MDA Lending Solutions obtains the opinion of an independent attorney licensed in the subject property state prior to furnishing any title information where applicable by law.

**Terms and Conditions:**

USE OF THE REPORT: this report contains information obtained from public land records and MDA Lending Solutions, Inc. (MDA) makes no representation or warranty concerning its accuracy other than as specifically set forth below. The information contained in this report is limited to data gathered from the public records of the county in which the land is situated during the period in which the current owner has purportedly held title through the effective date of the report, the public records have been indexed and made available for examination, and such other information as may be provided in MDA's written terms of service. THIS REPORT IS NOT AN ABSTRACT OR OPINION OF TITLE, TITLE COMMITMENT OR GUARANTEE, OR TITLE INSURANCE POLICY.

WARRANTY: MDA warrants to you, the customer, that the public record information contained in this report has been accurately reported from the public record sources available as of the effective date of this report.

MDA further warrants that it will perform all search services in a professional and business like manner in strict compliance with your instructions and the terms of your Settlement Services Purchase Agreement. THE FOREGOING WARRANTY IS THE ONLY WARRANTY WITH RESPECT TO THIS REPORT AND SERVICES. THIS WARRANTY IS IN LIEU OF ALL OTHER

# EQUIPMENT LEASE AGREEMENT

Lessor:  CHURCH HILL PLACE INVESTMENTS, LLC

9205 Atlee Branch Lane   P.O. Box 2260
Mechanicsville, VA 23116
(804) 730-9500

LESSEE: NAME and ADDRESS

Lease No. 6106
Rental Commencement
Date _Sept. 25, 2008_

SUPPLIER/VENDOR: NAME and ADDRESS

Hong Kong Market Inc.
5495-F Jimmy Carter Blvd.
Norcross, GA 30093

Various

LESSEE PERSON TO CONTACT   Ben Vo
TELEPHONE NO.   678-898-4962

SUPPLIER'S SALESMAN
TELEPHONE NO.

| QUANTITY | EQUIPMENT LEASED (Description, Model and Serial No., or Other Identification) | | PRICE |
|---|---|---|---|
| | Various Grocery Store Equipment (See Attached Documents) | | 1,000,000.00 |
| | | | |
| | **_ADDITIONAL COLLATERAL:_** _2nd Deed of Trust on 6428 Dawson Blvd., Norcross, GA  30093 and 2nd Deed of Trust on 3602 Brown's Mill Road, Atlanta, GA  30354_ | | |
| | | TOTAL LIST | $1,000,000.00 |
| | 1st/Last; DOT Fees; Doc Fees, etc. (all of which will be taken from proceeds) | FEE | $40,000.00 |
| | | CREDIT LIFE | |
| | Includes' Additional Equipment on Attached List | SALES/USE TAX | |
| LOCATION OF EQUIPMENT: Street Address | | STATE & DMV FEES | $60,000.00 |
| City _____  County  Gwinnett  State  GA | 5495-F Jimmy Carter Blvd. | | $0.00 |
| | | TOTAL COST | $1,100,000.00 |

| Initial Term of Lease (No. of Months)  60 | Amount of Each Rent Payment  26,000 | Sales/Use Tax (If Applicable)  1,560.00 | Total Monthly Payment  27,560.00 | Advance Payments  27,560.00 | Security Deposit  27,560.00 | Renewal Terms/Purchase Option  FM V |
|---|---|---|---|---|---|---|

**There is a 15% residual on this lease and will be paid as follows:  $55,000.00 on or before _Oct 25_, 2014 which is the 73rd Month and the 62nd Payment; and $55,000.00 on or before _Oct 25_ 2015 which is the 85th month and 63rd and final payment**

## EQUIPMENT LEASE AGREEMENT
### Terms and Conditions: Please Read Carefully Before Signing

1. **LEASE** – Lessor hereby Leases to Lessee and Lessee hereby leases from Lessor the personal property described above and in any other Schedule made a part hereof by the parties (Equipment), upon the terms and conditions set forth in this Equipment Lease Agreement (Lease).

2. **TERMS AND RENTAL PAYMENTS** – Rents due under this Lease shall commence at the date set forth above (Rental Commencement Date)- and shall continue for the Rental Term set forth above. For the said rental term Lessee agrees to pay Lessor an aggregate rental equal to the sum of all rental payments (including advance payments) specified above. A non refundable advance payment is due and payable at the time of signing this Lease by the Lessee (or a later date if stated herein). Remaining rental payments are due on the same date of each consecutive subsequent month after the Rental Commencement Date or upon such other calendar period as is specified. Rental payments are due in advance and shall be payable without notice at the office of the Lessor or at such other place as the Lessor or any assignee designates. Rental payments not made when due shall be delinquent, and shall be subject to a late charge in an amount equal to ten percent (10%) of each installment of rent due or $50.00 per month, whichever is greater. If Lessor shall at any time accept rent after it shall become due, such acceptance shall not constitute a waiver of any of Lessor's rights hereunder. If Lessee shall, for any reason, fail to re-deliver the Equipment to Lessor upon termination of the Lease for any reason whatsoever, within twenty (20) days after such termination, in accordance with Lessor's instructions, Lessee shall pay as additional rent for each month, or fraction thereof, after the date of termination of the Lease, an amount equal to one hundred-fifty percent (150%) of the initial month or periodic rental payment. Lessee agrees to sign a Bank Draft Agreement with Lessor for the purpose of permitting Lessor to draft monthly Lease payments. Unless agreed to in writing by Lessor to the contrary, each monthly Lease payment shall be made by a direct draft against a bank account of Lessee. In the event that Lessee cancels or interferes with the Lessor's authority to draft Lessee's bank account, Lessee shall be deemed in default and in addition to the remedies provided for in paragraph seven (7) herein, Lessor may, at its option in lieu of declaring default, require Lessee to pay as additional security an amount equal to fifteen percent (15%) of the original equipment cost. Should Lessee fail to pay this additional security within ten (7) days of Lessor's demand for the same, Lessor may declare Lessee in default and pursue all remedies available to it including those set forth in paragraph seven (7) herein. --

SEE FOLLOWING PAGES FOR ADDITIONAL TERMS AND CONDITIONS WHICH ARE PART OF THIS LEASE.

Lessor and Lessee agree to all terms and conditions set forth on this page and on the following pages hereof, and in witness thereof, hereby execute this lease.

ACCEPTED _Sept. 25_ - _2008_ DATE   _09-10-08_ DATE

LESSOR: CHURCH HILL PLACE INVESTMENTS, LLC
Hong Kong Market Inc.

BY _____   NAME OF LESSEE = (FULL LEGAL NAME)
Authorized Signature   BY _____

Page 1 of 8

Authorized Signature
Approved _____

EXHIBIT
B

**TERMS AND CONDITIONS OF LEASE (Continued)**

3.  DISCLAIMER OF WARRANTIES – LESSOR MAKES NO WARRANTY, EITHER EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER, INCLUDING WITHOUT LIMITATION, THE CONDITION OF THE EQUIPMENT, ITS MERCHANTABILITY OR ITS FITNESS FOR ANY PARTICULAR PURPOSE, AND AS TO LESSOR. LESEE LEASES THE EQUIPMENT "AS IS".

    Lessor shall not be liable for any loss or damage, direct, indirect or consequential, including but not limited to, business interruption and injury to persons or property resulting from any cause including non-delivery or late delivery, installation, failure or faulty operation, condition or use of the Equipment or failure of any representations, warranties or covenants made by Vendor. Lessor hereby assigns to Lessee during the Lease term hereof, all assignable rights which Lessor has against the Vendor for breach of warranty or other representation respecting the Equipment.

4.  SELECTION AND DELIVERY OF EQUIPMENT – Lessee has selected and chosen the Equipment and the Vendor thereof and Lessee requests that Lessor order and purchase Equipment from Vendor. Lessee shall arrange for the delivery of such Equipment to Lessee, which delivery shall be deemed to be complete and unconditionally accepted by Lessee upon Lessee's oral or written direction to Lessor to pay the vendor for the equipment.

5.  TITLE AND RECORDING – This is an agreement of Lease only. All of the Equipment shall remain personal property (even though said Equipment may hereafter become attached or affixed to realty) and the title thereto shall at all times remain in the Lessor exclusively. All replacement parts, modifications, repairs, alterations, additions, accessories and operating controls incorporated in or affixed to the Equipment (herein collectively called "additions" and included in the definition of Equipment) whether before or after the commencement of this Lease, shall become the sole and exclusive property of the Lessor upon being incorporated or affixed. At any time during the term of this Lease, upon the request of the Lessor, the Lessee will promptly affix to the Equipment in a prominent place, or as directed by Lessor, labels, plates, insignia, lettering or other markings supplied by the Lessor indicating Lessor's ownership of the Equipment, and shall keep the same affixed for the entire term of this Lease. Lessor is hereby authorized by Lessee, at Lessee's expense, to cause this Lease or any statement or other instrument relating thereto, showing the interest of the Lessor in the Equipment, to be filed or recorded with any governmental agency deemed appropriate by the Lessor. Lessee shall at its sole expense (1) protect and defend Lessor's title to the Equipment from and against all persons claiming against or through Lessee. (2) at all times keep the equipment free from any and all liens, encumbrances, attachments, levies, executions, burdens, charges or legal process of any and every type whatsoever. (3) give Lessor immediate written notice of any of the above, and (4) indemnify, protect and save Lessor harmless from any loss, cost and expense (including reasonable attorney's fees) incurred in connection with these matters. In addition, Lessee authorizes Lessor to file at Lessor's option, financing statements without Lessee's signature and, if a signature is required by law, Lessee irrevocably appoints Lessor as Lessee's attorney-in-fact to execute such financing statements. Provided however, at Lessor's request, Lessee agrees to join Lessor in executing financing statements pursuant to the Uniform Commercial Code or such other or additional security instruments evidencing Lessor's ownership interest in the equipment as Lessor may deem appropriate.

6.  DEFAULT – An event of default shall occur hereunder if Lessee or any guarantor of this lease: (1) fails to pay any installment of rent or other payment required hereunder within five (5) days after the same is due; or (2) fails to perform or observe any other covenant, condition or agreement to be performed or observed by it hereunder or breaches any representation or provision contained herein or in any other document furnished Lessor in connection herewith, or (3) without Lessor's prior written consent attempts to remove, sell, transfer, encumber, part with possession, assign or sublet any item of Equipment, or (4) becomes insolvent or makes an assignment for the benefit of creditors or bankruptcy, reorganization or insolvency proceedings are instituted by or against Lessee or any guarantor or. (5) shall suffer an adverse material change in its financial condition from the date hereof, and as a result thereof Lessor deems itself or any of its Equipment to be insecure, or (6) ceases doing business as a going concern or abandons any or all of the Equipment, or (7) shall be in default under any other lease or agreement at any time executed with Lessor or (8) dies, or is in breach of any obligation arising under this Lease Agreement.

7.  REMEDIES – Upon the occurence of any event of default and at any time thereafter Lessor may, in its sole discretion, do any one or more of the following: (1) upon notice to Lessee, terminate this Lease (Lessor retaining the option to consider that Lessee has entered into separate identical Leases with respect to each piece of Equipment). (2) Accelerate the Lease and declare all sums then due plus all sums due in the future hereunder, immediately due and payable; (all sums due shall include unpaid taxes and the like). (3) demand that the Lessee return all Equipment to Lessor in accordance with paragraph 16 hereof, (4) enter upon the Premises and take immediate possession of the Equipment, all without liability to Lessor or its agents for such entry, or for damage to property or otherwise (LESSEE HEREBY VOLUNTARILY, INTELLIGENTLY AND KNOWINGLY WAIVES ITS RIGHTS TO NOTICE, LEGAL PROCESS, PRIOR JUDICIAL HEARING AND REMEDY FOR TRESPASS). (5) sell any or all of the Equipment at public or private sale, with or without notice to Lessee or advertisement, or otherwise dispose of, hold, use, operate, lease to others or keep idle such Equipment, but if notice is required by law, any notice in writing of any such sale by Lessor given to Lessee not less than five (5) days prior to the date thereof shall constitute reasonable notice to Lessee. (6) purchase the Equipment at any public sale. (7) exercise any other right or remedy which may be available to it under the Uniform Commercial Code or any other applicable law or proceed by appropriate court action. In addition, Lessee shall be liable for all legal fees, including but not limited to attorney's fees equal to twenty percent (20%) of the total Lease balance then due plus accelerated balance, and other costs and expenses resulting from the foregoing defaults or the exercise of Lessor's remedies, including placing any Equipment in the same condition as when received by Lessee and in good operating condition. No remedy referred to in this paragraph is intended to be exclusive, but each shall be cumulative and in addition to any remedy referred to above or otherwise available to Lessor at law or in equity. No express or implied waiver by Lessor of any default shall constitute a waiver of any other default by Lessee or waiver of any of Lessor's rights now or hereafter conferred by statute or otherwise which may require Lessor to sell. Lease or otherwise use any Equipment in mitigation of Lessor's damages as set forth in this paragraph or which may otherwise limit or modify any of Lessor's rights or remedies under this paragraph.

8.  CARE AND USE OF EQUIPMENT – Lessee shall, at its own expense, maintain the Equipment in good operating condition and protect the same from deterioration, reasonable wear and tear resulting only from ordinary and proper use of the Equipment excepted. The disrepair or inoperability of the Equipment shall not in any way relieve Lessee of the Obligation to pay rent hereunder. During normal hours, Lessor may enter Lessee's premises in order to inspect the Equipment and/or show the equipment to prospective purchasers or future lessees thereof, or to otherwise protect Lessor's interest therein, and Lessee shall cooperate in affording Lessor the opportunity to do so. Lessee further agrees to use and operate the Equipment only in accordance with all applicable governmental laws and regulations.

9.  TAXES AND OTHER CHARGES – THIS LEASE IS INTENDED TO BE A NET LEASE, AND PAYMENTS HEREUNDER ARE INTENDED TO BE NET TO LESSOR. All taxes, assessments, licenses, and other charges (including, without limitation, personal property taxes and sales, use and leasing taxes) imposed, levied, or assessed on the ownership, possession, rental or use of the Equipment during the term of this Lease (except for Federal or State net income taxes) shall be paid by the Lessee whether such taxes would ordinarily be assessed against Lessor or Lessee. To the extent possible, under applicable law, for personal property tax return purposes only, Lessee shall include the Equipment on such returns which shall be timely filed by it in addition to the timely payment of such taxes by it. In case of failure of Lessee to pay said taxes, assessments, licenses or other charges, Lessor may pay all or any part of such items, in which event the amount so paid by Lessor shall be immediately payable by Lessee to Lessor as additional rental hereunder. Lessee shall promptly pay all costs, expenses and obligations of every kind and nature incurred in connection with the use, operation, rental, possession or ownership of the Equipment which may arise or become due during the term of the Lease, whether or not specifically mentioned herein.

10. INDEMNITY – Lessee does hereby agree to indemnify and save Lessor harmless from any and all liability, loss, cost, injury, damage, demand and expense (including, without limitation, reasonable attorney's fees) of any kind whatsoever arising out of, on account of, or in connection with the Equipment, including without limitation, its manufacture, selection, purchase, delivery, installation, ownership, possession, leasing, renting, operation, control, use, maintenance and the return thereof. This indemnity shall not be affected or terminated by the termination of this Lease, or any reason.

11. INSURANCE – Lessee shall, at its own expense, keep the Equipment insured against all risks of loss or damage from every and any cause whatsoever in such amount (but in no event less than the full replacement value of such Equipment) and in such form as is satisfactory to Lessor. Lessee shall also, at its own expense, carry public liability insurance, in such form as is satisfactory to Lessor, providing coverage for injury to person or property resulting from or in any way connected with the installation, use or operation of any or all of the Equipment. In no event shall Lessee's said insurance provide coverage less than $250,000.00 per person relating to personal injury, not less than $500,000.00 for injuries to more than one person, and $100,000.00 property

Page 2 of 8

Approved _LW_

damage. In order to protect Lessor from potential liability, Lessee's insurance shall provide Lessor with Parallel coverage, at Lessee's sole expense. All such insurance policies shall protect Lessor and Lessee as their interests may appear, and shall provide that all losses shall be payable to Lessor, at Lessor's election, and adjusted solely with Lessor. Lessee shall deliver to Lessor, prior to delivery of any item of Equipment, satisfactory evidence of such insurance. Each such policy shall contain an endorsement providing that the insurer will give Lessor not less than thirty (30) days prior written notice of the effective date of any alteration, change, cancellation, or modification of such policy, or the failure by Lessee to timely pay all required premiums, costs or charges with respect thereto.

12. **PERFORMANCE BY LESSOR OF LESSEE'S OBLIGATIONS** – In case of the failure of Lessee to comply with any provision of this Lease, Lessor shall have the right, but not the obligation, to effect such compliance on behalf of Lessee. In such event, all monies spent by and expenses of Lessor in effecting such compliance shall be deemed to be additional rent and shall be paid by Lessee to Lessor, plus interest at the rate of eighteen percent (18%) per annum or the highest lawful rate permitted by applicable law, whichever is lower, until such time as such additional rent is paid to Lessor.

13. **RISK OF LOSS** – Until such time as the Equipment is returned to and accepted by Lessor, pursuant to the terms hereof, Lessee hereby assumes and shall bear the entire risk of loss, damage, theft and destruction of and to the Equipment, or any portion thereof, from any cause whatsoever, commencing with delivery of such Equipment to Lessee. No loss, damage, theft or destruction of the Equipment for which Lessee has the risk of loss shall relieve Lessee in any way from the obligations hereunder. Lessee shall promptly notify Lessor in writing of any loss, theft, damage or destruction of the Equipment. In the event of any such loss, theft, damage or destruction, Lessee at the option of Lessor shall, (a) promptly place, at Lessee's expense, the Equipment in good repair, condition and working order in accordance with Vendor's specifications and to the satisfaction of Lessor, or (b) promptly replace at Lessee's expense, the Equipment with like equipment of the same or a later model to the satisfaction of Lessor, or (c) immediately pay the Lessor an amount equal to the total unpaid rentals, plus an additional amount equal to Lessor's residual interest in said Equipment. Lessee agrees that Lessor's residual interest is equal to an amount represented by the fair market value of the Equipment immediately prior to the loss or damage, but in no event less than twenty percent (20%) of the Equipment's original cost to Lessor. In the event Lessor elects or requires the Lessee to repair or replace any such item of Equipment pursuant to (a) or (b) above, continuation of this Lease and the continued payment of rent shall not be affected because of such loss, damage, or destruction, and the resulting repair or replacement, and the insurance proceeds received by Lessor, if any, after the use of such funds to pay any unpaid rentals hereunder, shall be paid to Lessee upon Lessee's furnishing proof satisfactory to Lessor that such repair or replacement has been completed in a satisfactory manner and fully paid for by Lessee. In the event Lessor elects option (c) Lessee shall be entitled to a credit against (but not in excess of) such payment required by (c) of the amount of such insurance proceeds actually received by Lessor on account of such Equipment, and, upon such payment by Lessee to Lessor of all the sums required of it pursuant to (c) this Lease shall then terminate with respect to each item of Equipment and Lessee shall be entitled to whatever interest Lessor may have in such item "as is" in its then condition and location without warranties of any type whatsoever, express or implied.

14. **OTHER COVENANTS AND WARRANTIES OF LESSEE** – LESSEE AGREES THAT ITS OBLIGATIONS UNDER THIS LEASE ARE ABSOLUTE, AND SHALL CONTINUE IN FULL FORCE AND EFFECT REGARDLESS OF ANY INABILITY OF LESSEE TO USE THE EQUIPMENT OR ANY PART THEREOF FOR ANY REASON WHATSOEVER, AND THAT ITS OBLIGATIONS SHALL NOT ABATE DUE TO ANY CLAIM OF SETOFF AGAINST LESSOR. In the event of any alleged claim or alleged right of set off against Lessor, Lessee shall fully perform and pay its obligations hereunder (including all rental), without setoff or defense of any kind) and its only recourse against Lessor shall be by a separate action. Lessee agrees to furnish promptly to Lessor the annual financial statement of Lessee (and of any guarantors of Lessee's performance under this Lease), certified by independent certified public accountants, and such interim financial statements as Lessor may require during the entire term of this Lease. Lessee warranties that this Lease has been duly executed and is validly executed and constitutes an obligation of Lessee enforceable in accordance with its terms and that no provision of this Lease is inconsistent with Lessee's charter and by-laws, if any, or any loan or credit agreement or other instrument to which Lessee is a party or by which Lessee or its property may be bound or affected.

15. **ASSIGNMENT BY LESSOR** – Lessor may at any time and from time to time assign all or any portion of this Lease and/or all or any portion of the rents and other sums at any time owing or payable by Lessee to Lessor hereunder, and/or the Equipment, without notice to Lessee and in such event Lessor's transferee or assignee shall have, to the extent of the transfer or assignment to it, all rights, powers, privileges and remedies of Lessor hereunder. Lessee agrees by the execution hereof that no such transferee or assignee of Lessor shall assume any obligation of Lessor hereunder (except for the application pursuant hereto of any insurance proceeds), and the obligations of Lessee hereunder shall not be subject, as against any such transferee or assignee, to any defense, setoff or counter-claim.

16. **RETURN OF EQUIPMENT** – (a) Upon termination of this Lease, for any reason whatsoever, Lessee shall, at its sole effort and expense, promptly return the Equipment to Lessor at an address designated by Lessor in the same condition as when received by Lessee and in good operating condition, excepting only reasonable wear and tear resulting from ordinary and proper use of the Equipment. Title to the leased equipment shall be transferred to Lessee only after Lessee has made all payments due under this lease and after Lessee has paid for the equipment as set forth in paragraph 17 hereof. (b) In the event Lessor at any time deems it to be in Lessor's best interest to convey the equipment to Lessee. Lessor may convey the same to Lessee and Lessee agrees to accept the same irrespective of the condition or location of the equipment. Lessee hereby irrevocably appoints Lessor as its agent to effectuate the transfer of the equipment should Lessor so decide to transfer the equipment pursuant to section (b) this paragraph.

17. **OPTION TO PURCHASE** – Lessor hereby grants to Lessee the option to purchase all (not part) of the Equipment at the expiration of the term of this lease for the amount stated herein. If no amount is quoted at the initiation of this Lease, Lessee may opt to purchase the Equipment for its then fair market value, payable in cash to Lessor. This option may be exercised by notification in writing, delivered to Lessor not more than one hundred eighty (180) days nor less than sixty (60) days prior to the expiration of the term of this Lease. If such purchase option is exercised, Lessee will, at the expiration of the term of this Lease, pay the stated amount in cash to Lessor and Lessor will execute and deliver to Lessee a Bill of Sale for the Equipment, free from all liens, encumbrances, assignments or hypothecations created by Lessor. In no event shall Lessor be obligated to convey title to the leased equipment to Lessee or any other person or entity unless Lessee has paid in full all lease payments including late charges, taxes and all other obligations due under the lease throughout the full lease term plus the full purchase price stated herein. The Leased equipment shall remain the property of Lessor until all payments required under the lease are fully made and the Lessee has fully paid for the equipment as set forth herein.

18. **WARRANTY OF BUSINESS PURPOSE** – Lessee hereby warrants and represents that the Equipment will be used for business purposes, and not for personal, family, household or agricultural purposes. Lessee expressly acknowledges that Lessor has relied upon this representation in entering into this Lease.

19. **MISCELLANEOUS** – This Lease shall be interpreted and construed according to the laws of the Commonwealth of Virginia. This Lease is being consummated in Hanover County, Virginia. Lessee agrees that any action brought in law or equity arising from this lease in any fashion may be commenced and maintained in any of the following courts: the General District Court or Circuit Court for either Hanover County, Virginia, or the City of Richmond, Virginia or the United States District Court for the Eastern District of Virginia. The invalidity of any portion of any provision of this Lease shall not affect the validity of the remainder of any such provision or the remaining provisions of this Lease. All notices and demands relating hereto shall be in writing and mailed to Lessor or Lessee at their respective addresses above, or at any other address designated by notice served in accordance herewith. If more than one Lessee is named in this Lease, the liability of each shall be joint and several. This Lease shall be binding upon the parties and their successors, legal representatives and assigns. In the event that Lessor should permit Lessee to assign or sublet this lease, it is expressly agreed by Lessee that Lessee shall remain liable to Lessor as primary obligor under this lease. Furthermore, Lessee agrees that Lessor may, without waiving any rights as against Lessee, pursue its claims arising under this lease against any guarantor, sublettee, assignee or any other entity or person in any fashion or order it sees fit. If any person, firm, corporation, or other entity shall guarantee this Lease and the performance by Lessee of its obligations hereunder, all of the terms and provisions hereof shall be duly applicable to such guarantor. NO REPRESENTATION OR STATEMENT MADE BY ANY REPRESENTATIVE OF LESSOR NOT STATED HEREIN SHALL BE BINDING. THIS LEASE CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES WITH RESPECT TO THE EQUIPMENT AND MAY NOT BE ALTERED, MODIFIED, TERMINATED OR DISCHARGED EXCEPT BY A WRITING SIGNED BY THE PARTY AGAINST WHOM SUCH ALTERATION, MODIFICATION, TERMINATION OR DISCHARGE IS SOUGHT. NO SUPPLIER OR VENDOR IS IN ANY WAY AUTHORIZED TO MAKE ANY REPRESENTATIONS OR COMMITMENTS ON BEHALF OF LESSOR.

Page 3 of 8

Approved _____

**Authority to Procure Loans or Leases**
**(Certified Copy)**

____ PROPRIETORSHIP, ____ PARTNERSHIP, _✓_ CORPORATION ____ LLC

I HEREBY CERTIFY that I am the ___ Owner, ___ Partner, _✓_ Secretary, _____ Member of _Hong Kong Market Inc.,_ and the keeper of the records of said ___ proprietorship, _____ partnership, _✓_ corporation, _____ LLC; that the following is a true copy of a resolution duly adopted at a meeting of the ___ Owner(s), ___ Partners, _✓_ Board of Directors, ___ Members thereof held in accordance with its ___ by laws, _____ partnership agreement and certificate at its offices at _5495-F Jimmy Carter Blvd., Norcross,_ Georgia, on the _6th_ day of _September_ ____ 20_08_, and that the same are now in full force.

**COPY OF RESOLUTIONS**

"BE IT RESOLVED, that the ___ owner, ___ partner, _✓_ corporate officer(s) ____ member or their/his successors in office or ownership, or any (insert number of persons required to sign) ____1____ of them be and they/he hereby are/is authorized for, on behalf of, and in the name of this ___ proprietorship, ___ partnership, _✓_ corporation, ___ member to:
   (a) Negotiate and procure loans or leases for itself and others and to act as surety or guarantor for others and execute such documents as may be required to procure the same from Church Hill Place Investments, LLC (hereinafter "CHP INV, LLC"), Mechanicsville, VA at the following rate:
   $ _27,560.00_ per month for _60_ months plus _FMV_% residual, and
   (b) Give security for any liabilities of the ___ proprietorship, ___ partnership, _✓_ corporation, ___ member appearing hereon are the genuine, original signatures of each respectively:
                        **(PLEASE SUPPLY GENUINE SIGNATURES HEREUNDER)**

   and execute the same on behalf of this ___ proprietorship, ___ partnership, _✓_ corporation, ____ member.
   "RESOLVED FURTHER", that said CHP INV, LLC is hereby authorized to pay the proceeds of any such loans, or leases to any vendor, creditor, or other entity on behalf of Lessee, as Lessor may see fit.
   "RESOLVED FURTHER", that this resolution shall irrevocably continue in full force for the term of the lease/loan.
   I HEREBY FURTHER CERTIFY that the following named persons rightfully hold the offices set opposite their respective names, that they continue to hold these offices at the present time, and that the signatures appearing hereon are the genuine, original signatures of each respectively:
                        **(PLEASE SUPPLY GENUINE SIGNATURES HEREUNDER)**

| | | |
|---|---|---|
| _____ Owner | _____ Vice President |
| _____ Owner | _____ Treasurer |
| _____ Partner | _____ Secretary |
| _____ Partner | _____ Member |
| x _____ President | _____ Member |
| _____ Chairman | |

IN WITNESS WHEREOF, I have hereunto affixed my name as ___ Owner, ___ Partner, _✓_ Secretary, ___ Member and certify that this is a correct copy of an existing and valid resolution this _9th_ day of _September_ , 20_08_.

_____
Owner / Partner / Secretary / Member

HONG KONG MARKET INC.
CORPORATE
SEAL
2007
★
GEORGIA

IF CORPORATION,
IMPRINT SEAL
AND
COMPLETE NEXT SECTION

I hereby certify that the undersigned is a director of said Corporation and that the foregoing is a correct copy of resolutions passed as therein set forth, and that the same are now in full force.

x _____
**(To be signed by a Director other than the Secretary)**
Approved _____

**ASSIGNMENT OF LEASE**

Addendum to Lease number 6106 between Church Hill Place Investments LLC and Hong Kong Market Inc.

1) There will be no prepayment penalty if this lease is paid off prior to the end of the third year. However if the lease is paid off early the residual payment schedule will be moved up in time accordingly.

2) We agree to allow them to replace the additional collateral, should it be sold, with a property of equal value and equity.

3) We agree that we have no interest in any inventory or equipment other than what is stated in the equipment list attachment to lease 6106.


_____  MGR          _____  09-10-08
Church Hill Place Investments LLC        Hong Kong Market Inc.

THIS GUARANTY IS, BY REFERENCE, MADE A PART OF LESSOR'S LEASE # <u>6106</u>
WITH LESSEE DATED _____

**GUARANTY**

TO:    **CHURCH HILL PLACE INVESTMENTS, LLC**                        <u>10th Sept</u>, 20 <u>08</u>
SIRS:

For valuable consideration, the receipt of which is hereby acknowledged, the Undersigned jointly and severally unconditionally
guarantee to you the full and prompt performance by the Lessee:
____<u>Hong Kong Market Inc.</u>____
Whose address is ____<u>5495-F Jimmy Carter Blvd., Norcross, GA 30093</u>____
herein called "Obligor", of all obligations which Obligor presently or hereafter may have to you and payment when due of all
sums presently or hereafter owing by Obligor to you, and agree to indemnify you against any losses you may sustain and
expenses you may incur as a result of any wrongful act of Obligor.

For the purpose of this guaranty and indemnity, all sums owing to you by Obligor shall be deemed to have become
immediately due and payable if (a) Obligor defaults in any of its obligations to you; (b) a petition under any chapter of the
Bankruptcy Code, as amended, or for the appointment of a receiver of any part of the property of Obligor be filed against
Obligor, and be not dismissed within thirty days; (c) such a petition be filed by Obligor; (d) Obligor makes a general assignment
for the benefit of creditors, suspends business or commits any act amounting to a business failure, or (e) an attachment be
levied or tax lien be filed against any of the Obligor's property.

This shall be a continuing guaranty and indemnity and, irrespective of the lack of any notice to or consent of Undersigned,
their obligations hereunder shall not be impaired in any manner whatsoever by any

(a)     new agreements or obligations of Obligor with or to you; amendments, extensions, modifications, renewals or
waivers of default as to any existing or future agreements or obligations of Obligor or third parties with or to you, or extensions
of credit by you to Obligor;

(b)     adjustments, compromises or releases of any obligations by Obligor, unsecured or other parties or exchanges,
releases or sales of any security of Obligor, Undersigned or other parties;

(c)     fictitiousness, incorrectness, invalidity or unenforceability, for any reason of any instrument or writing, or acts of
commission or omission by you or Obligor;

(d)compositions, extensions, moratoria or other relief granted to Obligor pursuant to any statute presently in force
or hereafter enacted, or

(e) interruptions in the business relations between you and Obligor.

Notice of your acceptance hereof, of default and non-payment by Obligor or any other parties, of presentment, protest
and demand, and of all other matters of which Undersigned otherwise might be entitled, is waived.

The obligations hereunder of each of the Undersigned are independent and several, and shall be binding upon their
respective heirs and personal representatives. The failure of any person to sign this guaranty and indemnity shall not affect the
liability of any signer thereof. The death or release from liability hereunder of any of Undersigned shall not relieve the others
from liability hereunder. Each of the Undersigned may terminate his obligations hereunder as to future transactions
between you and Obligor by registered mail notice to you at your above stated address, provided, however, that such
termination shall not affect either his liability hereunder with respect to any obligations of Obligor to you incurred prior to your
receipt of such notice, or the continuing liability of such of the others of Undersigned as have not given such notice.

Undersigned shall reimburse you, on demand, for all expenses incurred by you in the enforcement or attempted
enforcement of any of your rights hereunder against any of the Undersigned.

This guaranty and indemnity is assignable, and shall be construed liberally in your favor and shall inure to the benefit of
your successors and assigns. If Obligor should default in the performance of any of Obligor's obligations to you, and if any
third party makes any payment to you with respect thereto, such third party shall, to the extent thereof, be subrogated to all of
your rights against the Undersigned hereunder. Legal rights and obligations hereunder shall be determined in accordance with
the laws of the Commonwealth of Virginia. The undersigned hereby waives the benefit of their Homestead Exemption.

Very truly yours,

STATE OF ___<u>Georgia</u>___               Signature of
County/City of <u>Gwinnett / Norcross</u>
Subscribed and sworn to before me this <u>10</u> day of          Guarantor(s) (1) _____
<u>Sept</u>, 20 <u>08</u>
by <u>Lee M Tieu, Dahlia Tuyet Tieu</u>                    (2) _____
Print name(s) of Guarantor(s)
<u>BBB) Suh Fen Ng Wan Nguyen</u>                    (3) _____
_____
Notary Public
My commission expires ___<u>2-10-2012</u>___               (4) _____

Page 6 of 8

LEASE #6106

## DELIVERY AND ACCEPTANCE RECEIPT

We hereby acknowledge that as of the date indicated below the Equipment described in Lease No. 6106 between CHURCH HILL PLACE INVESTMENTS, LLC (Lessor) and the undersigned (Lessee) was properly installed and operating satisfactorily.

LESSEE AGREES THAT THE LESSOR HAS NOT MADE AND MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE DIRECTLY OR INDIRECTLY EXPRESS OR IMPLIED AS TO ANY MATTER WHATSOEVER INCLUDING THE SUITABILITY OF SUCH EQUIPMENT, ITS DURABILITY, ITS FITNESS FOR ANY PARTICULAR PURPOSE, ITS MERCHANTABILITY, ITS CONDITION, AND OR ITS QUALITY, AND AS BETWEEN LESSEE AND LESSOR OR LESSOR'S ASSIGNEE; LESSEE LEASES THE EQUIPMENT "AS IS" AND LESSEE AFFIRMS THAT IT HAS NO DEFENSES OR COUNTERCLAIM AGAINST LESSOR IN CONNECTION WITH THE LEASE.

We will make all payments to Lessor or its order.  We agree that any rights we may have against supplier or manufacturer of subject equipment will not be asserted as a counterclaim or defense against Lessor.

By signature below CHURCH HILL PLACE INVESTMENTS, LLC is authorized to make payment to the supplier(s) of the equipment described in the subject lease.

DATE: _9-10-08_____   LEESEE: Hong Kong Market Inc._____

BY: _____

---

## LANDLORD'S WAIVER

I/We _____HONG KONG MAll, LLC_____ owner of the property located at _5495-F Jimmy Carter Blvd._____ City/County of _____Gwinnett_____ State of _GA_ do hereby agree with **Church Hill Place Investments, LLC** and any financial institution they may choose for the financing or leasing of the equipment specified herein their successors and assigns (collectively called the Secured Party) that the interest acquired or to be acquired from **Hong Kong Market Inc.____** (Name of Debtor/Tennant) in and to the goods described on the attached list, which have been or may be installed upon or affixed to the above described property, shall be senior and paramount to the rights of the undersigned in and to the real property, and that upon any default under a Lease or Security Agreement, the Lessor or Secured Party may remove the described goods from the said property, free of all claims of the undersigned.

Witness my/our signature(s) and seal(s) this ___10th_ day of _September_____ 20_08_____

_____

_____

Approved _____

49067P60629

309861

FILED & RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY. GA.

2008 SEP 10  PM 2: 59

TOM LAWLER. CLERK

GEORGIA INTANGIBLE TAX PAID
$_____ none
TOM LAWLER
SUPERIOR COURT GWINNETT
COUNTY, GEORGIA

**EXHIBIT**

C

**STATE OF GEORGIA**

**COUNTY OF GWINNETT**

Upon recording, please return to:
H. Dennis Panter, Esq.
1827 Powers Ferry Road
Building 10, Suite 200
Atlanta, Georgia 30339

## SECURITY DEED AND AGREEMENT

THIS INDENTURE is made this 10th day of September 2008, by and between MILLENNIUM PARTNERS INVESTMENT GROUP, LLC., a Georgia Limited Liability Company, as party of the first part, hereinafter referred to as "Grantor"; and CHURCH HILL PLACE INVESTMENTS, whose address is 9205 Atlee Branch Lane, Mechanicsville, VA 23116, as party of the second part, hereinafter referred to as "Grantee."

### WITNESSETH:

FOR AND IN CONSIDERATION of the financial accommodations to Grantor by Grantee resulting in the obligation which is hereinafter more particularly described, and in order to secure that obligation, Grantor hereby grants, bargains, conveys, transfers, assigns and sells unto Grantee the following described land:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

TOGETHER WITH ANY AND ALL of the following: (i) all buildings, structures and other improvements now or hereafter located thereon or on any part or parcel thereof and all fixtures affixed or attached, actually or constructively, thereto; (ii) all and singular the tenements, hereditaments, easements and appurtenances belonging thereunto or in any wise appertaining thereto and the reversion and reversions, remainder or remainders thereof; (iii) all rents, issues, income, revenues and profits accruing therefrom, whether now or hereafter due; (iv) all accounts and contract rights now or hereafter arising in connection with any part or parcel thereof or any buildings, structures or improvements now or hereafter located thereon, including without limitation all accounts and contract rights in and to all leases or undertakings to lease now or hereafter affecting the land or any buildings, structures, or improvements thereon; (v) all minerals, flowers, crops, trees, timber, shrubbery and other emblements now or hereafter located thereon or thereunder or on or under any part or parcel thereof; (vi) all estates, rights, title and interest therein, or in any part or parcel thereof; (vii) all equipment, machinery, apparatus, fittings, fixtures whether actually or constructively attached thereto and including all trade, domestic and ornamental fixtures, furniture, furnishings and all personal property of every kind or description whatsoever now or hereafter located thereon, or in or on the buildings, structures and other improvements thereon, and used in connection with the operation and maintenance thereof, and all additions thereto and replacements thereof; and (viii) all building materials,

0091965

BK49067PG0630

supplies, goods and equipment delivered thereto and placed thereon for the purpose of being affixed to or installed or incorporated or otherwise used in the buildings, structures or other improvements now or hereafter located thereon or any part or parcel thereof. All of the foregoing are hereinafter sometimes referred to collectively as the "Premises."

TO HAVE AND HOLD the Premises to the only proper use, benefit and behoof of Grantee, forever, in fee simple.

GRANTOR WARRANTS that Grantor has good title to the Premises, that Grantor is lawfully seized and possessed of the Premises, that Grantor has the right to convey the Premises, that the Premises are unencumbered except as may be herein expressly provided and that Grantor shall forever warrant and defend the title to the Premises unto Grantee against the claims of all persons whomsoever.

THIS INSTRUMENT IS A DEED passing legal title pursuant to the laws of the State of Georgia governing deeds to secure debt and a security agreement granting a security interest pursuant to the Uniform Commercial Code of the State of Georgia, and it is not a mortgage. This deed and security agreement is made and intended to secure: (i) an obligation of Grantor to Grantee evidenced as follows:

That certain Unconditional Guaranty of Payment and Performance of even date herewith from Grantor to Grantee to secure that certain Guaranty of even date herewith from Grantor to the Grantee to secure that certain Equipment Lease Agreement between Hong Kong Market, Inc. and Grantee in the amount of $1,100,000.00.

(ii) any and all renewal or renewals, extension or extensions, modification or modifications thereof, and substitution or sub-stitutions therefor, either in whole or in part; and (iii) all indebtedness now or hereafter owing by Grantor to Grantee, however or whenever created, incurred, arising or evidenced, whether direct or indirect, joint or several, absolute or contingent, or due or to become due, and any and all renewal or renewals, extension or extensions, modification or modifications of and substitution or substitutions for, said indebtedness, either in whole or in part. The obligations which this deed and security agreement is given to secure are hereinafter sometimes referred to collectively as the "Indebtedness." This deed and security agreement is hereinafter sometimes referred to as this "Security Deed."

GRANTOR COVENANTS AND AGREES: (1) *Junior Encumbrances:* Grantor shall not create or permit to exist any liens or encumbrances on the Premises which are junior and inferior in terms of priority to this Security Deed. (2) *Payments by Grantor:* Grantor shall pay, when due and payable: (i) the Indebtedness in accordance with the terms and conditions of the instruments evidencing the same; (ii) all taxes, all assessments, general or special, and all other charges levied on or assessed or placed or made against the Premises, this Security Deed, the Indebtedness or any interest of Grantee in the Premises, this Security Deed or the Indebtedness; (iii) premiums on policies of fire and casualty insurance covering the Premises, as required by this Security Deed; (iv) premiums on all life insurance policies now or hereafter pledged as collateral for the Indebtedness or any part thereof; (v) premiums for all liability, rental, mortgage and flood insurance policies required by this Security Deed or now or hereafter required by Grantee in connection with the Premises or the Indebtedness or any part of either; and (vi) all ground rents, lease rentals and other payments respecting the Premises payable by Grantor. Grantor shall promptly deliver to Grantee, upon request by Grantee, receipts showing payment in full of all the foregoing items; provided, however, that Grantee shall not require a receipt showing payment in full of the Indebtedness. In the event any state, federal, municipal or other governmental law, order, rule or regulation becomes effective subsequent to the date hereof and in any manner changes or modifies the laws in force on the date hereof governing the taxation of the Indebtedness or the manner of collecting the taxes thereon so as to adversely affect Grantee by requiring that a payment or payments be made or other action be taken to protect Grantee's interest under this Security Deed or the Indebtedness, Grantor shall promptly pay any amounts required on or before the date the same are due or take any other action required on or before the date any such action must be taken. (3) *Grantee's Acts on Behalf of Grantor:* In the event Grantor shall either fail or refuse to pay or cause to be paid, as the same shall become due and payable, any item (including all items specified at Paragraph (2) immediately above) which Grantor is required to pay hereunder or which Grantor may pay to cure an event of default hereunder, or in the event Grantor shall either fail or refuse to do or perform any act which Grantor is obligated to do or perform hereunder or which Grantor may do or perform to cure an event of default hereunder, then Grantee, at Grantee's option, may make such payment or do or perform such act on behalf of Grantor. All such payments made by Grantee and all costs and expenses incurred by Grantee in doing or performing all such acts shall be and shall become part of the Indebtedness secured hereby and shall bear interest at the highest rate per annum then being charged with respect to any part of the Indebtedness secured hereby from the date paid or incurred by Grantee, and such interest thereon shall also be part of the Indebtedness secured hereby. (4) *Further Assurances:* Grantor shall, at any time and from time to time upon request by Grantee, make, execute and deliver, or cause to be made, executed

and delivered, any and all other and further instruments, documents, certificates, agreements, letters, representations and other writings which may be necessary or desirable, in the opinion of Grantee, in order to effectuate, complete, correct, perfect or continue and preserve the obligations of Grantor under the Indebtedness and the lien and security interest of Grantee hereunder. Grantor shall upon request by Grantee certify in writing to Grantee, or to any proposed assignee of this Security Deed, the amount of principal and interest then owing on the Indebtedness and whether or not any set-offs or defenses exist against all or any part of the Indebtedness. *(5) Rents and Leases:* Grantor hereby transfers, assigns and conveys unto Grantee all of Grantor's right, title and interest in and to all leases or undertakings to lease now or hereafter existing or made, and all other agreements for use or occupancy, with respect to the Premises or any part thereof, and grants to Grantee a security interest in all rents, issues, income, revenues, profits, accounts and contract rights due or to become due thereunder or otherwise deriving from the use and occupancy of the Premises. Grantor shall faithfully perform the covenants of Grantor as lessor under all present and future leases of all or any portion of the Premises and shall not do, neglect to do, or permit to be done, anything which may cause the termination of such leases, or any of them, or which may diminish or impair their value or the rents provided for therein or the interest of Grantor or Grantee therein or thereunder. Grantor, without first obtaining the written consent of Grantee, shall not further assign the rents, issues, income, revenues, profits, accounts or contract rights from the Premises or any part thereof, shall not consent to the cancellation or surrender of any lease of the Premises or any part thereof now existing or hereafter to be made, shall not modify any such lease so as to shorten the unexpired term thereof or so as to decrease the amount of the rent payable thereunder and shall not collect rents from the Premises or any part thereof for more than one month in advance. Grantor shall procure and deliver to Grantee upon request estoppel letters or certificates from each lessee, tenant, occupant in possession and other user of the Premises or any part thereof, as required by and in form and substance satisfactory to Grantee, and shall deliver to Grantee a recordable assignment of all of Grantor's interest in all leases now or hereafter existing or made with respect to the Premises or any part thereof, which assignment shall be in form and substance satisfactory to Grantee, together with proof of due service of a copy of such assignment on each lessee, tenant, occupant in possession or other user of the Premises or any part thereof. *(6) Maintenance and Repair:* Grantor shall maintain the Premises in good condition and repair, shall not commit or suffer any waste to the Premises, and shall comply with, or cause to be complied with, all statutes, ordinances, rules, regulations and directives of any governmental authority relating to the Premises or any part thereof or the use or occupancy of the Premises or any part thereof. No part of the Premises, including but not limited to any buildings, structures, parking lots, driveways or other improvements now or hereafter constructed on the land which is part of the Premises, shall be removed, demolished or materially altered without the prior written consent of Grantee. If at any time during the continuance of the Indebtedness any addition, alteration, change, repair, reconstruction or other work on the Premises of any nature, structural or otherwise, becomes necessary or desirable because of damage to or destruction of the Premises or any part thereof, the entire expense thereof, regardless of when the same shall be incurred or become due, shall be the sole obligation and responsibility of Grantor, and Grantor shall pay the entire expense thereof promptly when due. *(7) Hazard and Liability Insurance:* Grantor shall keep the Premises insured against loss or damage by fire and such other casualties and risks as the Grantee may require from time to time, with such companies, in such amounts and under such forms of policies as Grantee may approve. Such policies shall insure Grantee's interest in the Premises, name Grantee as an insured party thereunder, provide that losses thereunder shall be payable to Grantee pursuant to such forms of loss payable clauses as Grantee may approve and provide that no cancellation or reduction in coverage shall be effective unless the insuror first gives Grantee thirty (30) days prior written notice. Irrespective of the insurance required and approved by Grantee, Grantor shall assign and deliver to Grantee, as additional collateral for the payment of the Indebtedness, all policies of insurance which insure against loss or damage to the Premises, and Grantor hereby grants to Grantee a security interest in the proceeds from any and all such policies. Grantor shall also procure and maintain public liability insurance coverage with such companies, in such amounts and under such forms of policies as Grantee may approve, naming Grantee as an additional insured thereunder and providing that no cancellation or reduction in coverage thereunder shall be effective unless the insuror first gives Grantee thirty (30) days prior written notice. Forthwith upon the issuance of all such policies, Grantor shall deliver the same to Grantee together with evidence satisfactory to Grantee that the premiums therefor have been paid. Within fifteen *(15)* days prior to the expiration date of each such policy, Grantor shall deliver to Grantee a renewal policy together with evidence satisfactory to Grantee that the premium therefor has been paid. In the event of a foreclosure and sale by Grantee of the Premises, the purchaser of the Premises shall succeed to all rights of Grantor in and to such policies, including the right to the refund of unearned premiums and to dividends thereunder, and Grantee may, at Grantee's election, assign and deliver the policies to such purchaser without any warranty or representation, express or implied, and without recourse. In the event of damage to or destruction of the Premises or any part thereof, Grantee may adjust, settle or compromise claims under such policies, and the proceeds therefrom shall be paid to Grantee. Grantee, at Grantee's option and in Grantee's sole discretion, may either (i) apply the proceeds or any part thereof to the Indebtedness or (ii) require Grantor to repair, replace or reconstruct the Premises or any part thereof and disburse the proceeds to Grantor to be applied against the costs and expenses thereof as incurred or paid by Grantor. *(8) Flood Insurance:*  Grantor

BK4·9067P60632

represents and has certified to Grantee that no part of the Premises lies within a "special flood hazard area" as defined and specified by the United States Department of Housing and Urban Development pursuant to the Flood Disaster Protection Act of 1973. In the event Grantee determines that the rules or regulations of the Federal Reserve Board, the Comptroller of the Currency or any other governing agency licensing or regulating the operations of Grantee require that flood insurance coverage be obtained for the Premises or any part thereof in order for Grantee to comply with such rules or regulations or with the Flood Disaster Protection Act of 1973 as then in effect, then Grantor, upon receiving written notice from Grantee of such determination: (i) shall promptly purchase and pay the premiums for such flood insurance policies as Grantee deems required by such agency or agencies so that Grantee shall be deemed in compliance with the rules and regulations of such agency or agencies and with the Flood Disaster Protection Act of 1973 as then in effect; and (ii) shall deliver such policies to Grantee together with evidence satisfactory to Grantee that the premiums therefor have been paid. Such policies of flood insurance shall be in a form satisfactory to Grantee, shall name Grantee as an insured thereunder, shall provide that losses thereunder be payable to Grantee pursuant to such forms of loss payable clause as Grantee may approve, shall be for an amount at least equal to the Indebtedness or the maximum limit of coverage made available with respect to the Premises under the National Flood Insurance Act of 1968, as amended, whichever is less, and shall be noncancellable as to Grantee except upon thirty (30) days prior written notice given by the insuror  to Grantee. Within ten (10) days prior to the expiration date of each such flood insurance policy, Grantor shall deliver to Grantee a renewal policy or endorsement together with evidence satisfactory to Grantee that the premium therefor has been paid. (9) *Condemnation:* To the extent of the Indebtedness, Grantor grants to Grantee a security interest in any and all payments, awards, judgments or settlements, including interest thereon, to which Grantor may be or may become entitled or which Grantee may receive by reason of injury or damage to, or loss of, the Premises or any part thereof as a result of the exercise of the right of eminent domain. Notwithstanding any injury or damage to, or loss of, the Premises or any part thereof as a result of the exercise of the right of eminent domain, Grantor shall continue to pay the Indebtedness. All sums paid or payable to Grantor by reason of any injury or damage to, or loss of, the Premises or any part thereof as a result of the exercise of the right of eminent domain shall be delivered to Grantee and Grantee, at Grantee's option and at Grantee's sole discretion, may either (i) apply the sum or any part thereof to the Indebtedness or (ii) require Grantor to repair, replace or reconstruct the Premises or any part thereof and disburse such sums to Grantor to be applied against the costs and expenses thereof as incurred or paid by Grantor. (10) *Inspection:* Grantor shall permit any person designated by Grantee to visit and inspect the Premises, to examine the books of account and other records of Grantor with respect to the Premises, and to discuss the affairs, finances and accounts of Grantor with and to be advised as to the same by Grantor or a knowledgeable and duly authorized representative of Grantor, all at such reasonable times and intervals as Grantee may desire. (11) *Restriction on Transfer:* Unless Grantee gives its written consent thereto and such consent is recorded in the public deed records of the Clerk of the Superior Court of the county in which this Security Deed is recorded, Grantor shall not grant, bargain, convey, transfer, assign, exchange or sell all or any portion of Grantor's interest in the Premises prior to the satisfaction and release by Grantee of this Security Deed.

   EVENTS OF DEFAULT hereunder shall be the occurrence of any one or more of the following: (1) *Payment of Indebtedness:* Failure of Grantor to pay the Indebtedness or any part thereof when and as the same shall become due and payable, whether at the due date thereof or at a date fixed for prepayment or at a date fixed by reason of acceleration of the due date thereof or otherwise; (2) *Other Payments and Terms:* Failure of Grantor to make any payment (other than on the Indebtedness) required hereunder or to observe, perform, or comply with any of the covenants, terms or conditions set forth herein, or in any other instrument, document, agreement, letter or other writing heretofore, concurrently herewith or in the future executed by Grantor in favor of Grantee in connection with any transaction which resulted in the Indebtedness or any part thereof; (3) *False Statements:* If any certificate, representation, warranty, statement or other writing made herein or heretofore, now or hereafter furnished to Grantee by or on behalf of Grantor in connection with any transaction which resulted in the Indebtedness or any part thereof be false, untrue, incomplete or misleading in any respect as of the date made; (4) *Waste:* If the Premises or any part thereof should be subject to actual or threatened waste, or any part thereof be removed, demolished, or materially damaged or altered as a result of which the value of the Premises shall be diminished; (5) *Seizure or Levy:* If the Premises or any part thereof be seized or levied upon under legal process or a receiver be appointed for the Premises or any part thereof or for Grantor; (6) *Liens:* If any Federal tax lien or any claim of lien for labor, material or architectural or engineering services furnished or alleged to have been furnished in the improvement of or with respect to the Premises is filed of record against Grantor or the Premises and is not removed from record by payment or bond within thirty (30) days from the date of such filing; (7) *Priority Claim:* If any person shall assert any claim of priority over this Security Deed in any legal or equitable proceeding, and such claim shall not have been dismissed with prejudice within sixty (60) days after the filing thereof; (8) *Insolvency or Bankruptcy:* If Grantor shall become insolvent or make an assignment for benefit of creditors; or if Grantor should file a petition for bankruptcy or an arrangement pursuant to the Federal Bankruptcy Act or any similar statute; or if Grantor be adjudicated a bankrupt or an insolvent; or if any

BK 4 9 0 6 7 PG 0 6 3 3

proceeding is instituted against or on behalf of Grantor alleging that Grantor is insolvent or unable to pay Grantor's debts as they mature; or if a petition for the bankruptcy or arrangement of Grantor, pursuant to the Federal Bankruptcy Act or any similar statute is filed; (9) *Receiver:* If there should be appointed a receiver. liquidator or trustee for Grantor or for any property of Grantor; (10) *Judgments:* If any judgment is rendered against Grantor which is not paid in full and satisfied or is not appealed from within the time allowed for appeals and paid in full and satisfied when it becomes final; (11) *Liquidation or Dissolution:* Should Grantor, if a corporation, be liquidated or dissolved or its articles of incorporation expire or be revoked, or, if a partnership or business association, be dissolved or partitioned, or, if a trust, be terminated or expire.

GRANTEE'S REMEDIES AND POWER OF SALE upon the occurrence of an event of default shall be that, at Grantee's option and election without notice to Grantor, Grantee may declare all or any portion of the Indebtedness to be immediately due and payable, whereupon the same shall be and shall become due and payable forthwith without presentment, demand, protest or notice of any kind, all of which are expressly waived by Grantor, and Grantee, at Grantee's option and election, may do any one or more of the following: (1) *Entry and Possession:* Grantee may enter upon the Premises or any part thereof and take possession thereof, excluding therefrom Grantor and all agents, employees and representatives of Grantor; employ a manager of the Premises or any part thereof; hold, store, use, operate, manage, control, maintain and lease the Premises or any part thereof; conduct business thereon; make all necessary and appropriate repairs, renewals, and replacements; keep the Premises insured; or carry out or enter into agreements of any kind with respect to the Premises. (2) *Collection of Rents:* Grantee may collect and receive all rents, issues, income, revenues, profits, accounts and contract rights from the Premises and apply the same to the Indebtedness, after deducting therefrom all costs, charges, and expenses of taking, holding, managing, and operating the Premises, including the fees and expenses of Grantee's attorneys, and agents. (3) *Payments:* Grantee may pay any sum or sums deemed necessary or appropriate by Grantee to protect the Premises or any part thereof or Grantee's interest therein. (4) *Other Remedies:* Grantee may exercise all rights and remedies contained in any other instrument, document, agreement or other writing, heretofore, concurrently herewith or in the future executed by Grantor in favor of Grantee in connection with the transactions resulting in the Indebtedness or any part thereof. *(5) Appointment of Receiver:* Grantee may make application to any court and be entitled to the appointment of a receiver to take charge of the Premises or any part thereof without alleging or proving, or having any consideration given to, the insolvency of Grantor, the value of the Premises as security for the Indebtedness or any other matter usually incident to the appointment of a receiver. (6) *U.C.C. Remedies:* With respect to the personal property in which a security interest is herein granted, Grantee may exercise any or all of the rights accruing to a secured party under this Security Deed, the Uniform Commercial Code (Sections 109A-9-101 *et. seq.* of the Ga. Code Annotated) and any other applicable law. Grantor shall, if Grantee requests, assemble all such personal property and make it available to Grantee at a place or places to be designated by Grantee, which shall be reasonably convenient to Grantor and Grantee. Any notice required to be given by Grantee of a public or private sale, lease or other disposition of the personal property or any other intended action by Grantee may be personally delivered to Grantor or may be deposited in the United States mail with postage prepaid duly addressed to Grantor at the address of Grantor last known to Grantee at least five *(5)* business days prior to such proposed action, and shall constitute reasonable and fair notice to Grantor of any such action. (7) *Power of Sale:* Grantee may sell the Premises, or any part thereof or any interest therein separately, at Grantee's discretion, with or without taking possession thereof, at public sale before the courthouse door of the county in which the Premises, or a part thereof, is located, to the highest bidder for cash, after first giving notice of the time, place and terms of such sale by advertisement published once a week for four weeks (without regard for the number of days) in a newspaper in which advertisements of sheriff's sales are published in such county. The advertisement so published shall be notice to Grantor, and Grantor hereby waives all other notices. Grantee may bid and purchase at any such sale, and Grantee may execute and deliver to the purchaser or purchasers at any such sale a sufficient conveyance of the Premises, or the part thereof or interest therein sold. Grantee's conveyance may contain recitals as to the occurrence of any event of default under this Security Deed, which recitals shall be presumptive evidence that all preliminary acts prerequisite to such sale and conveyance were in all things duly complied with. The recitals made by Grantee shall be binding and conclusive upon Grantor, and the sale and conveyance made by Grantee shall divest Grantor of all right, title, interest and equity that Grantor may have had in, to and under the Premises, or the part thereof or interest therein sold, and shall vest the same in the purchaser or purchasers at such sale. Grantee may hold one or more sales hereunder until the Indebtedness has been satisfied in full. Grantor hereby constitutes and appoints Grantee as Grantor's agent and attorney-in-fact to make such sale, to execute and deliver such conveyance and to make such recitals, and Grantor hereby ratifies and confirms all of the acts and doings of Grantee as Grantor's agent and attorney-in-fact hereunder. Grantee's agency and power as attorney-in-fact hereunder are coupled with an interest, cannot be revoked by insolvency, incompetency, death or otherwise, and shall not be exhausted until the Indebtedness has been satisfied in full. The proceeds of each sale by Grantee hereunder shall be applied first to the costs and expenses of the sale and of all proceedings in connection therewith, including attorney's fees if applicable, then to the payment of the

BK4906 7PG0634

Indebtedness, and the remainder, if any, shall be paid to Grantor. If the proceeds of any sale are not sufficient to pay the Indebtedness in full, Grantee shall determine, at Grantee's option and in Grantee's discretion, the portions of the Indebtedness to which the proceeds (after deducting therefrom the costs and expenses of the sale and all proceedings in connection therewith) shall be applied and in what order the proceeds shall be so applied. Grantor covenants and agrees that, in the event of any sale pursuant to the agency and power herein granted, Grantor shall be and become a tenant holding over and shall deliver possession of the Premises, or the part thereof or interest therein sold, to the purchaser or purchasers at the sale or be summarily dispossessed in accordance with the provisions of law applicable to tenants holding over.

All rights and remedies set forth above are cumulative and in addition to any right or remedy provided for by statute, or now or hereafter existing at law or in equity, including without limitation the right of Grantee to collect or enforce the Indebtedness with or without taking any action with respect to the Premises. Grantee may, at Grantee's election and at Grantee's discretion, exercise each and every such right and remedy concurrently or separately.

ADDITIONAL PROVISIONS of this Security Deed, constituting additional covenants and agreements by Grantor, are as follows: (1) *Applicable Law:* This Security Deed shall be governed by and construed, interpreted and enforced in accordance with the laws of the State of Georgia. (2) *Forbearance:* Grantee shall not be deemed to waive any of Grantee's rights or remedies hereunder unless such waiver be in writing and signed by or on behalf of Grantee. No delay, omission or forbearance by Grantee in exercising any of Grantee's rights or remedies shall operate as a waiver of such rights or remedies, and a waiver in writing on one occasion shall not be construed as a consent to or a waiver of any right or any remedy on any future occasion. (3) *Time:* Time is and shall be of the essence of this Security Deed and the covenants and agreements by Grantor. (4) *Captions:* Any captions or heading preceding the text of separate sections, paragraphs and sub-paragraphs hereof are solely for reference purposes and shall not affect the meaning, construction, interpretation or effect of the text. *(5) Notices:* All notices, requests, demands and other communications hereunder shall be in writing and shall be deemed to have been duly given to Grantor if personally delivered or if mailed in the United States mail, by certified mail with a return receipt requested and with postage prepaid, to Grantor's last address known to Grantee. (6) *Severability:* In the event that any of the terms, provisions or covenants of this Security Deed are held to be partially or wholly invalid or unenforceable for any reason whatsoever, such holding shall not affect, alter, modify or impair in any manner whatsoever any of the other terms, provisions or covenants hereof not held to be partially or wholly invalid or unenforceable. (7) *Definitions:* The word "Grantor" as used herein shall include the plural should more than one Grantor execute this document; the masculine and feminine gender, regardless of the sex of Grantor or any of them; individuals, partnerships, joint ventures, corporations and other legal entities should such an entity execute this document; and the heirs, legal representatives, successors and assigns of Grantor. If more than one party shall execute this Security Deed, the word "Grantor" shall mean all parties signing, and each of them, and each and every agreement and obligation of Grantor shall be and mean the joint and several undertaking of each of them. The word "Grantee" as used herein shall include the transferees, successors, legal representatives and assigns of Grantee, and all rights of Grantee hereunder shall inure to the benefit of its transferees. successors, legal representatives and assigns. (8) *Other Provisions:* The terms and conditions set forth in Exhibit "B," if any, attached hereto are incorporated herein and made a part hereof by reference.

GRANTOR EXPRESSLY WAIVES the following: (1) *Notice and Hearing:* Any right Grantor may have under the Constitution of the State of Georgia or the Constitution of the United States of America to notice or to a judicial hearing prior to the exercise of any right or remedy provided to Grantee by this Security Deed, and Grantor waives Grantor's rights, if any, to set aside or invalidate any sale under power duly consummated in accordance with the provisions of this Security Deed on the ground (if such be the case) that the sale was consummated without prior notice or judicial hearing or both; and (2) all homestead exemption rights, if any, which Grantor or Grantor's family may have pursuant to the Constitution and laws of the United States, the State of Georgia or any other State of the United States, in and to the Premises as against the collection of the Indebtedness, or any part thereof. All waivers by Grantor in this paragraph have been made voluntarily, intelligently and knowingly by Grantor, after Grantor has been afforded an opportunity to be informed by counsel of Grantor's choice as to possible alternative rights. Grantor's execution of this Security Deed shall be conclusive evidence of the making of such waivers and that such waivers have been voluntarily, intelligently and knowingly made.

BK4906 7PG0635

IN WITNESS WHEREOF, this Security Deed has been executed and sealed by Grantor the day and year first above written.

Signed, sealed and delivered
in the presence of:

MILLENNIUM PARTNERS INVESTMENT GROUP, LLC, A GEORGIA LIMITED LIABILITY

_Linda H._
Unofficial Witness

BY: _____
Binh Vo

_Suh Fen Ng_
Notary Public

ITS:      Manager

G:\hdp\VO\Hong Kong Market add Finance SD& Agreement

BK49067PG0636

EXHIBIT "A"

Legal Description

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 217 OF THE 6TH DISTRICT, GWINNETT COUNTY GEORGIA, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: TO FIND THE TRUE POINT OF BEGINNING, BEGIN AT THE INTERSECTION OF THE SOUTHWESTERLY RIGHT-OF-WAY LINE OF JIMMY CARTER BOULEVARD WITH THE SOUTHEASTERLY RIGHT-OF-WAY OF INTERSTATE HIGHWAY NO. 85 (WHICH POINT IS 170 FEET SOUTHEASTERLY, AS MEASURED PERPENDICULARLY, FROM THE CENTERLINE OF INTERSTATE HIGHWAY NO. 85); RUNNING THENCE IN A SOUTHWESTERLY DIRECTION ALONG THE SOUTHEASTERLY RIGHT-OF-WAY OF INTER-STATE HIGHWAY NO.85 A DISTANCE OF 2,326.3 FEET TO A R/W MONUMENT ON THE SOUTHWESTERLY RIGHT-OF-WAY LINE OF INTERSTATE HI WAY NO. 85; RUNNING THENCE ALONG THE RIGHT-OF-WAY LINE OF INTERSTATE HIGHWAY NO. 85 NORTH 11 DEGREES 00 MINUTES WEST A DISTANCE OF 20.0 FEET TO A R/W MONUMENT ON THE SOUTHEASTERLY RIGHT-OF-WAY OF INTERSTATE HIGHWAY NO. NO. 85 (WHICH POINT IS 150 FEES SOUTHEASTERLY AS MEASURED PERPENDICULARLY, FROM THE CENTERLINE OF INTERSTATE HIGHWAY NO. 85); CUNNING THENCE IN A SOUTHWESTERLY DIRECTION ALONG THE SOUTHEASTERLY RIGHT-OF-WAY LINE OF INTERSTATE HIGHWAY NO. 85 A DISTANCE OF 724.4 FEET TO AN IRON PIN FOUND ON THE SOUTHEASTERLY RIGHT-OF-WAY LINE OF INTERSTATE HIGHWAY NO. 85, WHICH IS THE TRUE POINT OF BEGINNING; THENCE LEAVING THE RIGHT-OF-WAY LINE OF INTERSTATE HIGHWAY NO. 85 AND RUNNING SOUTH 11 DEGREES 00 MINUTES EAST A DISTANCE OF 300.0 FEET TO AN IRON PIN FOUND; RUNNING THENCE SOUTH 79 DEGREES 05 MINUTES 30 SECONDS WEST A DISTANCE OF 300.0 FEET TO AN IRON PIN FOUND; RUNNING THENCE NORTH 10 DEGREES 53 MINUTES WEST A DISTANCE OF 300.0 FEET TO AN IRON PIN FOUND ON THE SOUTHEASTERLY RIGHT-OF-WAY OF INTERSTATE HIGHWAY NO. 85; RUNNING THENCE ALONG THE SOUTHEASTERLY RIGHT-OF-WAY LINE OF INTERSTATE HIGHWAY NO. 85 NORTH 79 DEGREES 05 MINUTES EAST A DISTANCE OF 215.0 FEET TO AN IRON PIN FOUND ON THE SOUTHEASTERLY RIGHT-OF-WAY LINE OF INTERSTATE HIGHWAY NO. 85, WHICH IS THE TRUE POINT OF BEGINNING; SAID PROPERTY BEING 1.48 ACRES AND CONTAINING A ONE-STORY BRICK BUILDING ACCORDING TO A SURVEY PREPARED FOR LYNN A. ADAMS AND DECATUR FEDERAL SAVINGS AND LOAN ASSOCIATION AS MORTGAGEE BY WATTS AND BROWNING, ENGRS., A. W. BROWNING, R.L.S., SAID SURVEY BEING DATED MAY 22, 1985. TAX ID: R6217 006.

BK4906 7PG0637

**EXHIBIT "B"**

BK 4 9 0 6 7 PG 0 6 3 8

## EQUIPMENT LIST

| VENDOR | DESCRIPTION | AMOUNT | REMARK |
|---|---|---|---|
| TAMCO | SCALES, TOOLS, ICE MAKERS... (see Invoices) | $168,752.48 | |
| SEASON FOUR | 90 T W/4 COMPRESSOR AC 4SPR41-0904-ES140 | $89,512.00 | |
| HUSSMAN | 3-PRODUCE COOLER CASES C6X-12EP | $75,510.36 | |
| TAYLOR MECHANICAL | 12-HOODS & EXHAUST /SUPPLY FANS FOR RESTAURANTS | $59,087.61 | |
| NEOSYS | REFRIGRATION/ADDITIONAL COOLER FREEZER PANELS | $180,599.00 | |
| SANFORD | CHECK-OUT COUNTER & STAND | $60,000.00 | |
| DIXIE FOOD EQUIPMENT | 4 ISLAND FREEZERS | $200,561.00 | |
| SANFORD & ASSOCIATES | CHECK OUT COUNTER ACCESSORIES | $12,000.00 | |
| TRANS COMMUNICATIONS | POS SERVER & SYSTEM | $155,000.00 | |
| DIXIE FOOD EQUIPMENT | CUTTER/MIXER/SLICER | $15,074.00 | |
| | TOTAL: | $1,016,096.45 | |

BK49067PG0639

# Serial Number for Equipment

| Vendor | Description | Serial Number |
|---|---|---|
| SEASON FOUR | 90 T W/4 COMPRESSOR AC | B9983-0308 |
| HUSSMAN | 3-PRODUCE COOLER CASES C6X-12EP | C016-1151 C016-1149 C015-1518 C016-1160 |
| NEOSYS | REFRIGRATION/ADDITIONAL COOLER FREEZER PANELS | 1-S/N W 07C37858301002 1-S/N W 07C37858301001 1-S/N W 07D38216501002 1-S/N W 07D38216501001 |
| DIXIE FOOD EQUIPMENT | 4 ISLAND FREEZERS | A265-4935 A265-4936 A263-2073 A263-2074 A263-2075 A263-2011 |
| DIXIE FOOD EQUIPMENT | Cutter/Mixer/Slicer | 31-1235-549 31-1235-549 11740 00507 |
| TRAN COMMUNICATIONS | POS SERVER & SYSTEM | 7976AC1KPAMNST |

SEARCH Report for 100126-79500A - MDA Lending Solutions    •       https://portal.mdasolutions.com/report?subcode=Q18764;order_numb...

 **TITLE SEARCH REPORT**

**MDA Lending Solutions**
5300 Brandywine Parkway, Ste 100
Wilmington, DE 19803
Phone: 800-238-1905
Fax: 800-648-3193

| | | | |
|---|---|---|---|
| Lender: | Q18764 | Report Date: | 01/28/2010 |
| Application #: | Teiu | Borrower: | Ly Minh Teiu |
| Order ID: | 100126-79500A | Requested Address: | 3602 Browns Mill Road |
| Requested By: | Tia Wiggins    Fax 804-730-1179 | | Atlanta, GA 30354 |
| Effective Date: | 01/12/2010 | | FULTON County |

**Current Ownership**

LY MINH TIEU

**Deed Information Section 1**

Grantor(s)
STEIN REAL ESTATE COMPANY, LLC, A NORTH CAROLINA LIMITED LIABILITY COMPANY
(SUCCESSOR BY MERGER WITH STEIN REAL ESTATE LIMITED PARTNERSHIP, A NORTH
CAROLINA LIMITED PARTNERSHIP)

Grantee(s)
LY MINH TIEU

Type of Deed
LIMITED WARRANTY

Manner of Title
None Stated

| Document Number | Consideration $10.00 | Township CITY OF ATLANTA | | |
|---|---|---|---|---|
| Vesting Y | Book 40150 | Page 504 | Instrument Date 05/23/2005 | Recording Date 06/03/2005 |
| Other Deed Info MANNER OF TITLE NONE STATED | | | | |

**Tax Information Section 1**

| Tax ID Number 14-0063-LL-063-4 | | | |
|---|---|---|---|
| Property Type | Parcel | Exempt N | Exempt Amount |
| Exempt Type | | | |
| Total Assessment $1,275,700.00 | Land $279,900.00 | Improvements $995,800.00 | Other |
| Tax Amount $22,987.27 | Tax Year 2009 | Paid Thru 10/15/2007 | Due Date 11/20/2009 |
| Status DELINQUENT (W/PENALTY) | | | |
| Delinquent Tax Year 2009 | | Delinquent Tax Amount $34,249.81 | |

**EXHIBIT**

**D**

**Other Information**
PROPERTY TYPE COMMERCIAL; SEE UPDATES FOR TAX BREAK DOWN
DELQ. AMT $34249.81 YEAR 2009.

### Mortgage Information Section 1

| Mortgagee | | | | |
|---|---|---|---|---|
| SUNTRUST BANK - SD | | | | |

| Mortgagor(s) | | | | |
|---|---|---|---|---|
| LY MINH TIEU | | | | |

| Document Number | Open End | | | |
|---|---|---|---|---|
| | No | | | |

| Amount | Book | Page | Date of Mortgage | Recording Date |
|---|---|---|---|---|
| $800,000.00 | 45257 | 547 | 06/13/2007 | 06/26/2007 |

| Trustee |
|---|
| |

| Other Information |
|---|
| MORTGAGE AMOUNT VERIFIED. NO NEG AM. |

| Modification Purpose | Refi Mortgage Tax Exemption | Mortgage/Document Tax Paid | Mtg Tax Payment Method | Intangible Tax |
|---|---|---|---|---|
| | No | | | |

| NY Mortg Tax Lien |
|---|
| N/A |

| Assignee/Modification 1 |
|---|
| SUNTRUST BANK |

| Type | Amount | Instrument Date | Recording Date |
|---|---|---|---|
| assignment of leases and rents | | 06/13/2007 | 06/26/2007 |

| Document Number | Book | Page | Intangible Tax |
|---|---|---|---|
| | 45257 | 575 | |

| Mortgage/Document Tax Paid | Mtg Tax Payment Method | Additional Info | |
|---|---|---|---|
| | | | |

### Mortgage Information Section 2

| Mortgagee | | | | |
|---|---|---|---|---|
| CHURCH HILL INVESTMENTS - SD | | | | |

| Mortgagor(s) | | | | |
|---|---|---|---|---|
| LY MINH TIEU | | | | |

| Document Number | Open End | | | |
|---|---|---|---|---|
| | No | | | |

| Amount | Book | Page | Date of Mortgage | Recording Date |
|---|---|---|---|---|
| $1,100,000.00 | 47170 | 592 | 09/10/2008 | 09/10/2008 |

| Trustee |
|---|
| |

| Other Information |
|---|
| MORTGAGE AMOUNT VERIFIED. NO NEG AM. |

| Modification Purpose | Refi Mortgage Tax Exemption | Mortgage/Document Tax Paid | Mtg Tax Payment Method | Intangible Tax |
|---|---|---|---|---|
| | No | | | |

SEARCH Report for I00126-79500A - MDA Lending Solutions    https://portal.mdasolutions.com/report?subcode=Q18764;order_numb...

NY Mortg Tax Lien
*N/A*

**Lien Information Section 1**

| Docket Number | Book 1141 | Page 601 |
|---|---|---|
| Instrument Date 05/19/2009 | Amount $18,371.87 | |
| Lienholder(s) THE CITY OF ATLANTA, GEORGIA | Debtor(s) LY MINH TIEU | |
| Other Information THIS IS A STATE TAX LIEN. ASSIGNMENT RECORDED 6/15/09 BK 1188 PG 662, ASSIGNED LIEN TO PLYMOUTH PARK TAX SERVICES LLC | | |

**Lien Information Section 2**

| Docket Number | Book 1333 | Page 379 |
|---|---|---|
| Instrument Date 11/24/2009 | Amount $1,739.88 | |
| Lienholder(s) THE CITY OF ATLANTA, GEORGIA | Debtor(s) LY MINH TIEU | |
| Other Information THIS IS A STATE TAX LIEN. | | |

**Lien Information Section 3**

| Docket Number | Book 1333 | Page 380 |
|---|---|---|
| Instrument Date 11/24/2009 | Amount $1,906.75 | |
| Lienholder(s) THE CITY OF ATLANTA, GEORGIA | Debtor(s) LY MINH TIEU | |
| Other Information THIS IS A STATE TAX LIEN. | | |

**Misc**

GRANTEE VERIFIED PER DEED

VERIFIED MORTGAGES

2007 TAXES DELINQUENT IN THE AMOUNT OF 4534.84, 2008 DELINQUENT IN THE AMOUNT OF 6727.70

2009 DELINQUENT IN THE AMOUNT OF 22987.27

**Legal Description**

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN THE CITY OF ATLANTA AND IN LAND
LOT 63 OF THE 14TH DISTRICT OF FULTON COUNTY, GEORGIA, BEING MORE PARTICULARLY
DESCRIBED AS FOLLOWS: BEGINNING AT AN IRON PIN ON THE SOUTHEASTERLY SIDE OF
BROWNS MILL ROAD 1242.1 FEET NORTHEASTERLY FROM THE POINT OF INTERSECTION OF THE
RIGHT-OF-WAY OF THE SOUTHEASTERLY SIDE OF BROWNS MILL ROAD WITH THE SOUTH LINE
OF LAND LOT 66; THENCE EXTENDING NORTHEASTERLY ALONG THE SOUTHEASTERLY SIDE OF
BROWNS MILL ROAD 410 FEET TO AN IRON PIN THENCE EXTENDING SOUTHEASTERLY ON A LINE
FORMING AN INTERIOR ANGLE OF 90 DEGREES WITH THE SOUTHEASTERLY SIDE OF BROWNS
MILL ROAD, A DISTANCE OF 489.8 FEET TO AN IRON PIN; THENCE EXTENDING WESTERLY AND
SOUTHWESTERLY ALONG A CURVED LINE, A DISTANCE OF 302.2 FEET TO AN IRON PIN, THE
CHORD OF SAID LINE BEING 299.6 FEET, SAID CHORD LINE FORMING AN INTERIOR ANGLE OF 69
DEGREES 04 MINUTES WITH THE LOST DESCRIBED COURSE; THENCE CONTINUING
SOUTHWESTERLY ALONG A LINE FORMING AN INTERIOR ANGLE OF 200 DEGREES 45 MINUTES
WITH THE LAST DESCRIBED CHORD LINE, A DISTANCE OF 30 FEET TO AN IRON PIN; THENCE
EXTENDING NORTHWESTERLY ALONG A LINE FORMING AN INTERIOR ANGLE OF 104 DEGREES 36
MINUTES WITH THE LAST DESCRIBED COURSE, A DISTANCE OF 400 FEET TO THE IRON PIN ON
THE SOUTHEASTERLY SIDE OF BROWNS MILL ROAD AT THE POINT OF BEGINNING; BEING
IMPROVED PROPERTY HAVING A BUILDING LOCATED THEREON, KNOWN AS NO. 1602
(FORMERLY 3720) BROWNS MILL ROAD, S.E. ACCORDING TO THE PRESENT SYSTEM OF
NUMBERING IN THE CITY OF ATLANTA, GEORGIA, AND BEING THE SAME PROPERTY SHOWN ON A
PLAT DESIGNATED SURVEY FOR LAOW. INCORPORATED MADE BY C.R. ROBERTS, REGISTERED
ENGINEER, DATED APRIL 30, 1963, SAID PLAT BEING MADE A PART HEREOF. LESS AND EXCEPT:
ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 63 OF THE 14TH DISTRICT
OF FULTON COUNTY, GEORGIA AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:
BEGINNING AT A POINT ON THE PRESENT SOUTHEAST SIDE OF BROWNS MILL ROAD AT THE
POINT OF INTERSECTION OF A LINE BETWEEN THE PROPERTY OF LAOW, INCORPORATED AND
THAT OF TEXLITO, INC., AND RUNNING THENCE IN A SOUTHEASTERLY DIRECTION ALONG THE
PRESENT SOUTHEASTERLY SIDE OF BROWNS MILL ROAD, A DISTANCE OF 410 FEET TO
PROPERTY NOW OR FORMERLY OWNED BY MAX L. KUNIANSKY; THENCE IN A SOUTHERLY
DIRECTION ALONG THE WESTERN SIDE OF SAID PROPERTY A DISTANCE OF 15 FEET, MORE OR
LESS, TO A POINT LOCATED 35 FEET FROM THE PROPOSED CONSTRUCTION CENTER LINE OF
BROWNS MILL ROAD; THENCE IN A SOUTHWESTERLY DIRECTION ALONG A LINE 35 FEET FROM
AND PARALLEL WITH THE PROPOSED CONSTRUCTION CENTER LINE OF BROWNS MILL ROAD A
DISTANCE OF 410 FEET TO THE NORTHEAST SIDE OF PROPERTY OF TEXLITO, INC.; THENCE
NORTHWEST ALONG THE NORTHEAST SIDE OF SAID PROPERTY A DISTANCE OF 15 FEET, MORE
OR LESS, TO THE PRESENT SOUTHEAST SIDE OF BROWNS MILL ROAD AND THE POINT OF
BEGINNING. TAX ID: 14-0063-LL-063-4.

V I R G I N I A :

IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

| | |
|---|---|
| CHURCH HILL PLACE INVESTMENTS, LLC, <br> a Virginia limited liability company <br><br> Plaintiff, <br><br> v. <br><br> MDA LENDING SOLUTIONS, INC., <br> a Delaware corporation <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> )    Case No. _____ <br> ) <br> ) <br> ) <br> ) <br> ) |

## AFFIDAVIT PURSUANT TO VA. CODE ANN. § 8.01-28

COMMONWEALTH OF VIRGINIA    )
COUNTY OF HANOVER           ); to wit:

This day Vanessa Eberle personally appeared before me, the undersigned Notary Public, and being sworn, said as follows:

1.    My name is Vanessa Eberle and I am the Collection Manager for Church Hill Place Investments, LLC.

2.    I have personally reviewed the allegations contained in the accompanying Complaint filed on behalf of Church Hill Place Investments, LLC. The allegations contained therein are true and accurate.

3.    The documents attached to the Complaint are a true and accurate copies of the documents as alleged in the Complaint.

4.    To the best of my belief, the amount of Church Hill Place Investments, LLC's claim against the defendant is $1,586,834.01, plus late charges of $2,887.29 per month from January 25, 2010 through the term of the Lease, plus costs and

$317,366.80 attorney fees, plus return of the Leased Property and all collateral securing the Lease.

5.     I am over the age of eighteen (18) and am competent to make this affidavit.

AND FURTHER THE AFFIANT SAYETH NOT.

Executed this 19th day of March, 2010.

_Vanessa Eberle_ (signature)

Vanessa Eberle, Collection Manager
Church Hill Place Investments, LLC

The forgoing Affidavit was acknowledged and sworn to before me this 19th day of March, 2010, by Vanessa Eberle, Collection Manager for Church Hill Place Investments, LLC, on behalf of the limited liability company.

_Kathleen McCarty_ (signature)
Notary Public

My Commission Expires: Sept 30, 2012
Registration Number: 7175873

Kathleen McCarty
Commonwealth of Virginia
Notary Public
Commission No. 7175873
My Commission Expires 09/30/2012

 **TITLE SEARCH REPORT**

MDA Lending Solutions
5300 Brandywine Parkway, Ste 100
Wilmington, DE 19803
Phone: 800-238-1905
Fax: 800-648-3193

| | | | |
|---|---|---|---|
| **Lender:** | Q18764 | **Report Date:** | 09/02/2008 |
| **Application #:** | Newmarket | **Borrower:** | New Market Realty Inc. |
| **Order ID:** | 080829-94343A | **Requested Address:** | 3602 Browns Mill Road |
| **Requested By:** | Tia Wiggins   Fax: 804-730-1179 | | ATLANTA, GA 30354 |
| **Effective Date:** | 08/09/2008 | | FULTON County |

### Current Ownership

LY MINH TIEU

### Deed Information Section 1

| Grantor(s) STEIN REAL ESTATE COMPANY LLC | | | | |
|---|---|---|---|---|
| Grantee(s) LY MINH TIEU | | | | |
| Type of Deed WARRANTY | | | | |
| Manner of Title None Stated | | | | |
| Document Number | Consideration $10.00 | Township ATLANTA | | |
| Vesting Y | Book 40150 | Page 504 | Instrument Date 05/23/2005 | Recording Date 06/03/2005 |
| Other Deed Info MANNER OF TITLE NOT STATED | | | | |

### Deed Information Section 2

| Grantor(s) STEIN REAL ESTATE COMPANY LLC | | | | |
|---|---|---|---|---|
| Grantee(s) LY MINH TIEU | | | | |
| Type of Deed QUIT CLAIM | | | | |
| Manner of Title None Stated | | | | |
| Document Number | Consideration $1.00 | Township ATLANTA | | |
| Book 40150 | | Page 501 | Instrument Date 05/23/2005 | Recording Date 06/03/2005 |
| Other Deed Info MANNER OF TITLE NOT STATED | | | | |

### Tax Information Section 1

| Tax ID Number 140063LL0634 |
|---|

| Property Type | Parcel | Exempt N | Exempt Amount |
|---|---|---|---|
| Exempt Type | | | |
| Total Assessment $1,275,700.00 | Land $279,900.00 | Improvements $995,800.00 | Other |
| Tax Amount $20,934.24 | Tax Year 2008 | Paid Thru 10/15/2007 | Due Date 10/15/2008 |
| Status CURRENT | | | |
| Delinquent Tax Year | | Delinquent Tax Amount | |
| Other Information PROPERTY TYPE NOT STATED | | | |

**Misc**

GRANTOR VERIFIED PER DEED

NO OPEN MORTGAGES/DEEDS OF TRUST FOUND

NO COUNTY LEVEL LIENS/JUDGEMENTS TO REPORT

**Legal Description**

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN THE CITY OF ATLANTA, IN LAND LOT 63 OF THE 14TH DISTRICT OF FULTON COUNTY, GEORGIA, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: TO FIND THE TRUE POINT OF BEGINNING, BEGIN AT THE POINT OF INTERSECTION OF THE SOUTHEASTERLY RIGHT-OF-WAY LINE OF BROWNS MILL ROAD (A VARIABLE RIGHT-OF-WAY) WITH THE SOUTH LINE OF LAND LOT 66, SAID DISTRICT; RUNNING THENCE NORTHEASTERLY ALONG THE SOUTHEASTERLY RIGHT-OF-WAY LINE OF BROWNS MILL ROAD, 1,242.1 FEET TO A REBAR FOUND; RUNNING THENCE SOUTH 39 DEGREES 25 MINUTES 15 SECONDS EAST, 15.53 FEET TO A REBAR FOUND ON THE NORTHEASTERLY LINE OF PROPERTY NOW OR FORMERLY OWNED BY SELIG ENTERPRISES, INC., WHICH REBAR MARKS THE TRUE POINT OF BEGINNING; FROM THE TRUE PONT OF BEGINNING THUS ESTABLISHED, RUN THENCE NORTHEASTERLY ALONG THE SOUTHEASTERLY RIGHT-OF-WAY LINE OF BROWNS MILL ROAD, AND FOLLOWING THE ARC OF A CURVE TO THE LEFT (SAID ARC HAVING A RADIUS OF 3,848.72 FEET AND BEING SUBTENDED BY A CHORD LINE HAVING A BEARING OF NORTH 65 DEGREES 39 MINUTES 33 SECONDS EAST AND A LENGTH OF 405.57 FEET), AN ARC DISTANCE OF 405.76 FEET TO A REBAR FOUND ON THE NORTHWESTERLY LINE OF PROPERTY NOW OR FORMERLY OWNED BY FRANK LOIS, TRUSTEE; MIMING THENCE SOUTH 25 DEGREES 00 MINUTES 15 SECONDS EAST, ALONG THE SOUTHWESTERLY LINE OF SAID FRANK LOIS, TRUSTEE PROPERTY, 474.80 FEET TO A REBAR SET; RUNNING THENCE ALONG THE ARC OF A CURVE TO THE LEFT (SAID ARC HAVING A RADIUS OF 664.18 FEET AND BEING SUBTENDED BY A CHORD LINE HAVING A BEARING OF SOUTH 85 DEGREES 55 MINUTES 45 SECONDS WEST AND A CHORD LENGTH OF 299.60 FEET), AN ARC DISTANCE OF 302.20 FEET TO A REBAR SET; RUNNING THENCE SOUTH 65 DEGREES 10 MINUTES 45 SECONDS WEST, 30.00 FEET TO A REBAR SET AT THE SOUTHEASTERLY CORNER OF THE AFOREMENTIONED SELIG ENTERPRISES, INC. PROPERTY; RUNNING THENCE NORTH 39 DEGREES 25 MINUTES 15 SECONDS WEST ALONG THE NORTHEASTERLY LINE OF SAID SELIG ENTERPRISES, INC. PROPERTY, 384.47 FEET TO THE REBAR FOUND ON THE SOUTHEASTERLY RIGHT-OF-WAY LINE OF BROWNS MILL ROAD, WHICH MARKS THE TRUE PONT OF BEGINNING; AND BEING A TRACT OR PARCEL OF LAND CONTAINING 3.268 ACRES, HAVING A ONE-STORY BRICK AND STUCCO WAREHOUSE BUILDING LOCATED THEREON KNOWN AS NO. 3602 BROWNS MILL ROAD, ACCORDING TO THE PRESENT SYSTEM OF NUMBERING BUILDINGS IN THE CITY OF ATLANTA, FULTON COUNTY, GEORGIA, AND BEING MORE PARTICULARLY SHOWN ON AND DESCRIBED IN ACCORDANCE WITH A PLAT OF SURVEY PREPARED FOR LY MINH TIEU, THE SUMMIT NATIONAL BANK AND SECURITY UNION TITLE INSURANCE COMPANY BY MCCLUNG SURVEYING SERVICES, INC., BEARING THE SEAL AND CERTIFICATION OF MICHAEL R. NOLES, GEORGIA REGISTERED LAND SURVEYOR NO. 2646, DATED MAY 11, 2005. TAX ID: 140063LL0634.

Note: MDA Lending Solutions obtains the opinion of an independent attorney licensed in the subject property state prior to furnishing any title information where applicable by law.

**Terms and Conditions:**

USE OF THE REPORT: this report contains information obtained from public land records and MDA Lending Solutions, Inc. (MDA) makes no representation or warranty concerning its accuracy other than as specifically set forth below. The information contained in this report is limited to data gathered from the public records of the county in which the land is situated during the period in which the current owner has purportedly held title through the effective date of the report, the public records have been indexed and made available for examination, and such other information as may be provided in MDA's written terms of service. THIS REPORT IS NOT AN ABSTRACT OR OPINION OF TITLE, TITLE COMMITMENT OR GUARANTEE, OR TITLE INSURANCE POLICY.

WARRANTY: MDA warrants to you, the customer, that the public record information contained in this report has been accurately reported from the public record sources available as of the effective date of this report.

MDA further warrants that it will perform all search services in a professional and business like manner in strict compliance with your instructions and the terms of your Settlement Services Purchase Agreement. THE FOREGOING WARRANTY IS THE ONLY WARRANTY WITH RESPECT TO THIS REPORT AND SERVICES. THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTIES OR MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

LIMITATIONS: The information in this report does not guarantee the enforceability of your lien. To guarantee your interest in the title to the property, please consult legal counsel or obtain a title insurance policy for further review of public records and underwriting procedures to determine if additional information that would affect title exists.

MDA's liability for a breach of this warranty shall be limited to the actual amount of any loss incurred by you, the maximum amount allowed by applicable law or $25,000, or that amount as limited by your Settlement Services Purchase Agreement, whichever is less, unless specifically determined by the Customer's Settlement Services Purchase Agreement and is conditioned upon your enforcing the promissory note and security instrument to the fullest extent provided by law and taking all reasonable steps to protect any interest you may acquire in the real property described in this report. In the state of Florida, our liability is limited to $1,000. In the states of Washington and Oklahoma, our liability is limited to the cost of this report.

IN NO EVENT SHALL MDA BE LIABLE FOR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES EVEN IF ADVISED THAT SUCH DAMAGES ARE POSSIBLE OR LIKELY. This warranty is extended to you as MDA's customer and is not intended for the benefit of any third party. MDA's warranty liability will terminate with the transfer, sale or assignment of any loan made by you which relates to the property described in this report, unless MDA agrees in writing to an extension of the warranty.

End of report.

 **TITLE SEARCH REPORT**

MDA Lending Solutions
5300 Brandywine Parkway, Ste 100
Wilmington, DE 19803
Phone: 800-238-1905
Fax: 800-648-3193

| | | | |
|---|---|---|---|
| Lender: | Q18764 | Report Date: | 01/28/2010 |
| Application #: | Teiu | Borrower: | Ly Minh Teiu |
| Order ID: | 100126-79500A | Requested Address: | 3602 Browns Mill Road |
| Requested By: | Tia Wiggins   Fax: 804-730-1179 | | Atlanta, GA 30354 |
| Effective Date: | 01/12/2010 | | FULTON County |

### Current Ownership

LY MINH TIEU

### Deed Information Section 1

**Grantor(s)**
STEIN REAL ESTATE COMPANY, LLC, A NORTH CAROLINA LIMITED LIABILITY COMPANY
(SUCCESSOR BY MERGER WITH STEIN REAL ESTATE LIMITED PARTNERSHIP, A NORTH
CAROLINA LIMITED PARTNERSHIP)

**Grantee(s)**
LY MINH TIEU

**Type of Deed**
LIMITED WARRANTY

**Manner of Title**
None Stated

| Document Number | Consideration $10.00 | Township CITY OF ATLANTA | | |
|---|---|---|---|---|
| Vesting Y | Book 40150 | Page 504 | Instrument Date 05/23/2005 | Recording Date 06/03/2005 |

**Other Deed Info**
MANNER OF TITLE NONE STATED

### Tax Information Section 1

| Tax ID Number 14-0063-LL-063-4 | | | |
|---|---|---|---|
| Property Type | Parcel | Exempt N | Exempt Amount |
| Exempt Type | | | |
| Total Assessment $1,275,700.00 | Land $279,900.00 | Improvements $995,800.00 | Other |
| Tax Amount $22,987.27 | Tax Year 2009 | Paid Thru 10/15/2007 | Due Date 11/20/2009 |
| Status DELINQUENT (W/PENALTY) | | | |
| Delinquent Tax Year 2009 | | Delinquent Tax Amount $34,249.81 | |
| Other Information PROPERTY TYPE COMMERCIAL; SEE UPDATES FOR TAX BREAK DOWN DELQ. AMT $34249.81 YEAR 2009. | | | |

### Mortgage Information Section 1

| Mortgagee | | | | |
|---|---|---|---|---|
| SUNTRUST BANK - SD | | | | |

| Mortgagor(s) | | | | |
|---|---|---|---|---|
| LY MINH TIEU | | | | |

| Document Number | Open End | | | |
|---|---|---|---|---|
| | No | | | |

| Amount | Book | Page | Date of Mortgage | Recording |
|---|---|---|---|---|
| $800,000.00 | 45257 | 547 | 06/13/2007 | Date 06/26/2007 |

| Trustee |
|---|
| |

| Other Information |
|---|
| MORTGAGE AMOUNT VERIFIED. NO NEG AM. |

| Modification Purpose | Refi Mortgage Tax Exemption No | Mortgage/Document Tax Paid | Mtg Tax Payment Method | Intangible Tax |
|---|---|---|---|---|

| NY Mortg Tax Lien |
|---|
| N/A |

| Assignee/Modification 1 |
|---|
| SUNTRUST BANK |

| Type | Amount | Instrument Date | Recording Date |
|---|---|---|---|
| assignment of leases and rents | | 06/13/2007 | 06/26/2007 |

| Document Number | Book | Page | Intangible Tax |
|---|---|---|---|
| | 45257 | 575 | |

| Mortgage/Document Tax Paid | Mtg Tax Payment Method | Additional Info | |
|---|---|---|---|

### Mortgage Information Section 2

| Mortgagee | | | | |
|---|---|---|---|---|
| CHURCH HILL INVESTMENTS - SD | | | | |

| Mortgagor(s) | | | | |
|---|---|---|---|---|
| LY MINH TIEU | | | | |

| Document Number | Open End | | | |
|---|---|---|---|---|
| | No | | | |

| Amount | Book | Page | Date of Mortgage | Recording |
|---|---|---|---|---|
| $1,100,000.00 | 47170 | 592 | 09/10/2008 | Date 09/10/2008 |

| Trustee |
|---|
| |

| Other Information |
|---|
| MORTGAGE AMOUNT VERIFIED. NO NEG AM. |

| Modification Purpose | Refi Mortgage Tax Exemption No | Mortgage/Document Tax Paid | Mtg Tax Payment Method | Intangible Tax |
|---|---|---|---|---|

| NY Mortg Tax Lien |
|---|
| N/A |

### Lien Information Section 1

| Docket Number | | Book | Page |
|---|---|---|---|
| | | 1141 | 601 |
| Instrument Date 05/19/2009 | | Amount $18,371.87 | |

| Lienholder(s)<br>THE CITY OF ATLANTA, GEORGIA | Debtor(s)<br>LY MINH TIEU |
|---|---|
| Other Information<br>THIS IS A STATE TAX LIEN.<br>ASSIGNMENT RECORDED 6/15/09 BK 1188 PG 662, ASSIGNED LIEN TO PLYMOUTH PARK TAX SERVICES LLC | |

### Lien Information Section 2

| Docket Number | Book<br>1333 | Page<br>379 |
|---|---|---|
| Instrument Date<br>11/24/2009 | Amount<br>$1,739.88 | |
| Lienholder(s)<br>THE CITY OF ATLANTA, GEORGIA | Debtor(s)<br>LY MINH TIEU | |
| Other Information<br>THIS IS A STATE TAX LIEN. | | |

### Lien Information Section 3

| Docket Number | Book<br>1333 | Page<br>380 |
|---|---|---|
| Instrument Date<br>11/24/2009 | Amount<br>$1,906.75 | |
| Lienholder(s)<br>THE CITY OF ATLANTA, GEORGIA | Debtor(s)<br>LY MINH TIEU | |
| Other Information<br>THIS IS A STATE TAX LIEN. | | |

### Misc

GRANTEE VERIFIED PER DEED

VERIFIED MORTGAGES

2007 TAXES DELINQUENT IN THE AMOUNT OF 4534.84, 2008 DELINQUENT IN THE AMOUNT OF 6727.70

2009 DELINQUENT IN THE AMOUNT OF 22987.27

### Legal Description

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN THE CITY OF ATLANTA AND IN LAND LOT 63 OF THE 14TH DISTRICT OF FULTON COUNTY, GEORGIA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGINNING AT AN IRON PIN ON THE SOUTHEASTERLY SIDE OF BROWNS MILL ROAD 1242.1 FEET NORTHEASTERLY FROM THE POINT OF INTERSECTION OF THE RIGHT-OF-WAY OF THE SOUTHEASTERLY SIDE OF BROWNS MILL ROAD WITH THE SOUTH LINE OF LAND LOT 66; THENCE EXTENDING NORTHEASTERLY ALONG THE SOUTHEASTERLY SIDE OF BROWNS MILL ROAD 410 FEET TO AN IRON PIN THENCE EXTENDING SOUTHEASTERLY ON A LINE FORMING AN INTERIOR ANGLE OF 90 DEGREES WITH THE SOUTHEASTERLY SIDE OF BROWNS MILL ROAD, A DISTANCE OF 489.8 FEET TO AN IRON PIN; THENCE EXTENDING WESTERLY AND SOUTHWESTERLY ALONG A CURVED LINE, A DISTANCE OF 302.2 FEET TO AN IRON PIN, THE CHORD OF SAID LINE BEING 299.6 FEET, SAID CHORD LINE FORMING ON INTERIOR ANGLE OF 69 DEGREES 04 MINUTES WITH THE LOST DESCRIBED COURSE; THENCE CONTINUING SOUTHWESTERLY ALONG A LINE FORMING AN INTERIOR ANGLE OF 200 DEGREES 45 MINUTES WITH THE LAST DESCRIBED CHORD LINE, A DISTANCE OF 30 FEET TO AN IRON PIN;

THENCE EXTENDING NORTHWESTERLY ALONG A LINE FORMING AN INTERIOR ANGLE OF 104 DEGREES 36 MINUTES WITH THE LAST DESCRIBED COURSE, A DISTANCE OF 400 FEET TO THE IRON PIN ON THE SOUTHEASTERLY SIDE OF BROWNS MILL ROAD AT THE POINT OF BEGINNING; BEING IMPROVED PROPERTY HAVING A BUILDING LOCATED THEREON, KNOWN AS NO. 1602 (FORMERLY 3720) BROWNS MILL ROAD, S.E. ACCORDING TO THE PRESENT SYSTEM OF NUMBERING IN THE CITY OF ATLANTA, GEORGIA, AND BEING THE SAME PROPERTY SHOWN ON A PLAT DESIGNATED SURVEY FOR LAOW, INCORPORATED MADE BY C.R. ROBERTS, REGISTERED ENGINEER, DATED APRIL 30, 1963, SAID PLAT BEING MADE A PART HEREOF. LESS AND EXCEPT: ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 63 OF THE 14TH DISTRICT OF FULTON COUNTY, GEORGIA AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGINNING AT A POINT ON THE PRESENT SOUTHEAST SIDE OF BROWNS MILL ROAD AT THE POINT OF INTERSECTION OF A LINE BETWEEN THE PROPERTY OF LAOW, INCORPORATED AND THAT OF TEXLITO, INC., AND RUNNING THENCE IN A SOUTHEASTERLY DIRECTION ALONG THE PRESENT SOUTHEASTERLY SIDE OF BROWNS MILL ROAD, A DISTANCE OF 410 FEET TO PROPERTY NOW OR FORMERLY OWNED BY MAX L. KUNIANSKY; THENCE IN A SOUTHERLY DIRECTION ALONG THE WESTERN SIDE OF SAID PROPERTY A DISTANCE OF 15 FEET, MORE OR LESS, TO A POINT LOCATED 35 FEET FROM THE PROPOSED CONSTRUCTION CENTER LINE OF BROWNS MILL ROAD; THENCE IN A SOUTHWESTERLY DIRECTION ALONG A LINE 35 FEET FROM AND PARALLEL WITH THE PROPOSED CONSTRUCTION CENTER LINE OF BROWNS MILL ROAD A DISTANCE OF 410 FEET TO THE NORTHEAST SIDE OF PROPERTY OF TEXLITO, INC.; THENCE NORTHWEST ALONG THE NORTHEAST SIDE OF SAID PROPERTY A DISTANCE OF 15 FEET, MORE OR LESS, TO THE PRESENT SOUTHEAST SIDE OF BROWNS MILL ROAD AND THE POINT OF BEGINNING. TAX ID: 14-0063-LL-063-4.

Note: MDA Lending Solutions obtains the opinion of an independent attorney licensed in the subject property state prior to furnishing any title information where applicable by law.

Terms and Conditions:

USE OF THE REPORT: this report contains information obtained from public land records and MDA Lending Solutions, Inc. (MDA) makes no representation or warranty concerning its accuracy other than as specifically set forth below. The information contained in this report is limited to data gathered from the public records of the county in which the land is situated during the period in which the current owner has purportedly held title through the effective date of the report, the public records have been indexed and made available for examination, and such other information as may be provided in MDA's written terms of service. THIS REPORT IS NOT AN ABSTRACT OR OPINION OF TITLE, TITLE COMMITMENT OR GUARANTEE, OR TITLE INSURANCE POLICY.

WARRANTY: MDA warrants to you, the customer, that the public record information contained in this report has been accurately reported from the public record sources available as of the effective date of this report.

MDA further warrants that it will perform all search services in a professional and business like manner in strict compliance with your instructions and the terms of your Settlement Services Purchase Agreement. THE FOREGOING WARRANTY IS THE ONLY WARRANTY WITH RESPECT TO THIS REPORT AND SERVICES. THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTIES OR MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

LIMITATIONS: The information in this report does not guarantee the enforceability of your lien. To guarantee your interest in the title to the property, please consult legal counsel or obtain a title insurance policy for further review of public records and underwriting procedures to determine if additional information that would affect title exists.

MDA's liability for a breach of this warranty shall be limited to the actual amount of any loss incurred by you, the maximum amount allowed by applicable law or $25,000, or that amount as limited by your Settlement Services Purchase Agreement, whichever is less, unless specifically determined by the Customer's Settlement Services Purchase Agreement and is conditioned upon your enforcing the promissory note and security instrument to the fullest extent provided by law and taking all reasonable steps to protect any interest you may acquire in the real property described in this report. In the state of Florida, our liability is limited to $1,000. In the states of Washington and Oklahoma, our liability is limited to the cost of this report.

IN NO EVENT SHALL MDA BE LIABLE FOR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES EVEN IF ADVISED THAT SUCH DAMAGES ARE POSSIBLE OR LIKELY. This warranty is extended to you as MDA's customer and is not intended for the benefit of any third party. MDA's warranty liability will terminate with the transfer, sale or assignment of any loan made by you which relates to the property described in this report, unless MDA agrees in writing to an extension of the warranty.

End of report.