IN THE UNITED STATEDS DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CHURCH HILL PLACE INVESTMENTS, LLC,

      Plaintiff,

v.                           Case No.: 3:10-cv-00288-RLW

MDA LENDING SOLUTIONS INC.,

      Defendant.

## DEFENDANT MDA LENDING SOLUTIONS INC.'S SUPPLEMENTAL BRIEF

COMES NOW, MDA Lending Solutions Inc., (hereinafter "MDA") defendant, by counsel, pursuant to this Honorable Court's Order dated August 3, 2010 (Dckt # 16) wherein the Court, *sua sponte,* requested briefing on Subject Matter Jurisdiction; the legal relationship of the parties; and application of documentary evidence to each party's position and in accordance with that Order, Defendant submits the following:

**I.**    **THE AMOUNT IN CONTROVERSY REQUIREMENT FOR DIVERSITY JURISDICTION IS MET**

The Plaintiff's Complaint, if filed in good faith, is controlling in determining whether the amount in controversy is met.  In *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938) the Supreme Court stated clearly that

> Moreover, the status of the case as disclosed by the plaintiff's complaint is controlling in the case of a removal, since the defendant must file his petition before the time for answer or forever lose his right to remove.  Of course, if, upon the face of the complaint, it is obvious that the suit cannot involve the necessary amount, removal will be futile and remand will follow.  **But the fact that it appears from the face of the complaint that the defendant has a valid defense, if asserted, to all or a portion of the claim, or the circumstance that the rulings of the district court after removal reduce the amount recoverable below the jurisdictional requirement, will not justify remand**.

*Id*. at 292 (emphasis added).  *See also St. Paul Reinsurance Company LTD., v. Greenburg*, 134 F.3d 1250, 1253 (5th Cir. 1998) (affirming that unless the law gives a different rule, the sum claimed by plaintiff is controlling).  This approach is both logical and practical.

In the case at bar, Plaintiff has alleged that due to MDA's alleged breach of contract and/or warranty that it has suffered damages in the amount of $1,576,834.01[1]. (Compl. ¶20, & Prayer for Relief).  Plaintiff also attaches a copy of the lease in support of its claim for damages (Compl. Exh."B") and Security Agreement, which contains an itemized list of equipment totaling $1,016,096.45 (Compl. Exh. "C").  These allegations are sufficiently pled to meet the threshold requirement.  "It has long been recognized that unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Reinsurance Company LTD* at 1253 (internal citations omitted).  The Plaintiff's sum as alleged in the Complaint should not be disregarded unless this Court finds it not to be in good faith.

    A.    The Fourth Circuit Has Held That The Amount Specified In The Complaint Will Determine Whether The Jurisdictional Amounts Are Satisfied For Purposes Of Removal.

In an unreported decision, the 4th Circuit adhered to the rule set forth in *St. Paul Mercury Indemnity Co.* stating "[g]enerally, the amount specified in the complaint will determine whether jurisdictional amount is satisfied for purposes of removal. *Bartnikowski v. NVR, Incorporated*, 307 Fed. Appx. 730, 734, 2009 WL 106378, *3 (C.A. 4 (N.C.)), citing *Wiggins v. North Am. Equitable Life Assurance Co.*, 644 F.2d 1014, 1016 (4th Cir. 1981).  As is evident by the cases cited by this Court in its Order

---

[1] Exclusive of late charges, costs and attorney's fees.

(Dckt # 16), "[d]etermining the amount in controversy becomes more difficult…where…Plaintiffs have left damages unspecified. *Id*. The 4th Circuit has not abandoned the good faith element of the plaintiff's pleading. Ordinarily the jurisdictional amount is determined by the amount of the plaintiff's original claim, provided that the claim is made in good faith. *Wiggins* at 1016, citing *McDonald v. Patton*, 240 F.2d 424 (4th Cir. 1957).

In *Bartnikowski*, the plaintiff did not plead a specific monetary amount for damages, but instead sought "an award of the value of plaintiff's unpaid wages, including fringe benefits" among other unspecified damages. *Bartnikowski* at *1. The defendant tried to support the amount in controversy by submitting estimates of potential claims; the Court found this to be too speculative to support diversity jurisdiction. *Bartnikowski* at *2. In *Wiggins*, the Court faced a situation where the plaintiff pled damages in the amount of $9,000.00 plus punitive damages. *Wiggins*, at 1016. The amount specifically pled was an amount below the then $10,000.00 jurisdictional limit. *Id*. The *Wiggins* Court went on to affirm the general rule "[o]rdinarily the jurisdictional amount is determined by the amount of the plaintiff's original claim, provided that the claim is made in good faith. *Id*. It further stated that good faith is "a salient factor" but good faith alone will not control "if it appears to a legal certainty that the plaintiff cannot recover the jurisdictional amount…" *Id*. at 1017. The Court also provided some parameters as to the "legal certainty" by stating "[h]owever, the legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim." *Id*. at 1017. The Court in *Wiggins* held that "plaintiff as a matter of 'legal certainty,' could not recover punitive damages in this action." *Id*. at 1017. The Court found that Maryland law

unambiguously barred the recovery of punitive damages in a purely contractual claim, such as the plaintiff's.  As such, the amount in controversy was at most $9,000.00.  *Id.*

This is not a claim that has unspecified damages or seeks damages below the jurisdictional threshold.  On the contrary, Plaintiff has made a specific claim and has incorporated an alleged Lease and Security Instrument in support of his claims.  There is no speculation as in *Bartnikowski*, or mathematical guesswork to be undertaken by the parties or the Court.  Additionally, this is not a case where punitive damages or some other uncertain form or disallowable category of damages are being sought as in *Wiggins*. The Plaintiff's claim is pecuniary in nature and reducible to an actual dollar amount as alleged in the Complaint, and the only questions with regard to the amount in controversy are set forth in the affirmative defenses.

B.      The 10th Circuit Cases Cited Are Not Inconsistent With The Case At Bar

It should be noted that none of the cases originating in the 10th Circuit and cited by this Court in its Order involved a Complaint that alleged a specific dollar amount in controversy.  In *McPhail*, the 10th Circuit's recent opinion clarifying and setting forth the appropriate guidelines in cases of removal seems to advocate that the amount in controversy can be met "by calculation from the complaint's allegations".  *See McPhail v. Deere & Company*, 529 F.3d 947, 954 (10th Cir. 2008), citing *Meridian Security Ins. Co. v. Sadowski*, 441 F. 3d 536, 540-43 (7th Cir. 2006).  In *McPhail,* the Court correctly noted that "[t]his set of rules bears no evident logical relation either to the purpose of diversity jurisdiction, or to the principle that those who seek to invoke federal jurisdiction must establish its prerequisites." *McPhail* at 953.  (internal citations omitted). It must be

noted that the Court in *McPhail,* as well as the other 10th Circuit cases*,* addressed a complaint that did not plead amount of damages.

In *McPhail*, the Court re-affirmed its holding in *Laughlin* stating that

…where a state court complaint does not identify a specific amount that the plaintiff seeks to recover, the burden is on a defendant seeking removal to demonstrate that this jurisdictional prerequisite is satisfied by "affirmatively establish[ing]" in the petition that the amount in controversy exceeds the statutory requirement.

*McPhail* at. 955.  As such, the defendant's burden arises in the context where no specific dollar amount is pled that would satisfy the jurisdictional requirement.

*McPhail* recites what defendants must show to support a claim of removal.  Of note, prior to reciting several methods to demonstrate such, the *McPhail* Court states "[s]till, in the **absence of an explicit demand** for more than $75,000.00, the defendants must show how much is in controversy through other means.  *Id* at 955. (emphasis added).  The Court's whole analysis is based on the premise that since there is an absence of an explicit demand, the defendants must show how much is in controversy.  The lack of an explicit demand or claim in all of the cases are the unifying factor and the reason that defendants face an uphill battle.  With the exception in *Wiggins*[2], the cases all have either no specific demand, or a demand that was short of the jurisdictional threshold.

In accordance with the cases cited by this Court and referenced herein, the defendant's burden has been met as the Plaintiff's Complaint not only specifies an amount well in excess of the amount in controversy requirement, it attaches supporting

---

[2] The Court held that punitive damages as a matter of legal certainty were not recoverable thereby reducing amount in controversy below threshold.

documentation.  A defendant need only address the remaining methods if the Complaint is silent or the Plaintiff is not acting in good faith.  Neither of those conditions is present here.

Even if this Court were to determine more was necessary under *McPhail*, the first method cited by that Court favors the defendant's position regarding removal.  "First, the defendant may rely on an estimate of the potential damages from the allegations in the complaint." *McPhail* at 955, citing, *Meridan* 441 F.3d 536, 541.  The Court appropriately begins its analysis with the face of the complaint and if there is no specified amount, then proceeds to allegations contained therein.  Even where the complaint lacks specificity, the Court can make a determination by "reading the face of the complaint".... *McPhail* at 956*., citing *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999).  This makes complete sense as the Plaintiff is initiating the lawsuit and controls what amount is put into controversy by its initial pleading, the Complaint.

This Court seems to rely on *Telluride Regional Airport Authority v. Am. Shelter Techn., Inc.*, 2010 WL 2507723 (D. Colo. 2010) for the proposition that the affirmative defense as alleged by defendant defeats the amounts specifically pled by the Plaintiff.  In the *Telluride* case, the Plaintiff did not request any particular monetary relief.  *Id* at *2.  The defendant, in its Notice of Removal, relied upon a Civil Cover Sheet indicating that Plaintiff was seeking damages in excess of $100,000.00 damages. *Id*.  The *Telluride* Court went on to state in its rationale, [i]ndeed, in determining the amount in controversy, and in light of the presumption against removal, a **court is limited to facts alleged in the complaint or presented within the Notice of Removal**.  *Id*. at *2 (emphasis added), citing *Laughlin v. K-Mart Corp*., 50 F.3d 871, 873 (10th Cir. 1995).  (In that case the

Court found that the Petition merely alleged that the amount in controversy is in excess of $10,000.00 for each of two claims.  The notice of removal did not refer to an amount in controversy but attempted to rely on its reference to the removal statute.  This was insufficient.)

In *Telluride*, the defendant sought to amend its notice of removal to include a portion of the stipulated scheduling and discovery order which indicated that the plaintiff was seeking $221,488.00 in damages to support its amount in controversy.  *Telluride* at *3.  The defendant tried to bolster its position in part based on the language of *McPhail* holding "that beyond the complaint itself, other documentation can provide the basis for determining the amount in controversy for purposes of diversity jurisdiction…. *Id*. at *3 (internal citations omitted).  The *Telluride* Court cited to *Watson v. Blankingship*, 20 F.3d 383 (10th Cir. 1994) which held that for purposes of establishing subject matter jurisdiction based upon the amount in controversy, a party must have a **good faith belief** that amount in controversy is met.  *Id*. at *3 (emphasis original).  At the time that the defendant filed its notice of removal all it offered was the allegations in the complaint and the civil cover sheet; no additional facts were stated. *Id*. at *2.  As such, at the time of removal, the defendant did not have a basis to believe that the amount in controversy had been met and the Court remanded same.

The Court, in what appears to be dicta, notes that the defendant filed a motion for summary judgment based on a contractual limitation of liability clause.  *Id* at *3.  However, the assertion of the limitation clause did not play a central role in the disposition of the case nor was it a factor in the rationale whether the amount in controversy was met.  The Court noted in passing that defendant could not have acted in

good faith in light of this provision coupled with a lack of any specific monetary relief requested in the complaint.   Conspicuously absent was any meaningful analysis or discussion of the limitation of liability clause on the Court's decision to remand.   Also absent was any analysis or application of the "legal certainty" standard.   Defendant submits that this analysis is absent as the limitation of liability clause had no bearing on the Court's holding.

To the extent that *Telluride* provides any guidance to this Court on the case at bar, Defendant submits that any analysis (as none was set forth by the Court) would have been starkly different had the complaint contained a specific dollar amount as is present here.   In *Telluride*, the defendant could not aver in good faith that the plaintiff was challenging the limitation of liability clause as no amount in excess of said clause was claimed.   In this case, it is clear and unequivocal that Plaintiff has challenged the validity of the limitation clauses by the very fact that it is seeking $1,576,834.01, well in excess of the limitation clauses.   As such, this Court would have to make a determination that the limitation clauses set forth as affirmative defenses presented a bar to recovery up to the amount in controversy requirement to a "legal certainty".   Unlike the Court in *Wiggins*, this Court is faced with the applicability and enforceability of a limitation of liability clause, not a category of damages prohibited by law.   In short, this Court would have to pre-try the facts of this case.

C.      Affirmative Defenses Should Not Defeat Amount in Controversy

Under the *McPhail* rationale, "a proponent of federal jurisdiction must prove contested facts…[b]ut once those facts are proven, a defendant (like a plaintiff) is entitled

to stay in federal court unless it is 'legally certain' that less than $75,000.00 is at stake."
*McPhail* at 954.   *McPhail* goes on to state that "[i]f the amount is uncertain then there is
potential controversy, which is to say that at least $75,000.00 is in controversy in the
case." *Id*.   While MDA asserts several affirmative defenses that may reduce or eliminate
any claim for damages, these defenses do not defeat diversity jurisdiction.   *See St. Paul
Mercury Indemnity Co.* at 292.   The fact that MDA has valid defenses to "all or a portion
of the claim" will not justify remand or defeat jurisdiction.   *Id*.   The Plaintiff has made
specific monetary demands that both exceed the limitation of liability clause(s) that MDA
asserts and if Plaintiff is successful, the judgment could well exceed the amount in
controversy threshold.   As such, the amount in controversy meets the threshold for
jurisdictional purposes.

This makes complete sense as almost every Answer contains affirmative defenses
that seek to reduce or eliminate liability all together.   To raise an affirmative defense in a
pleading requires a good faith basis for doing so and taken to its logical conclusion could
defeat the amount in controversy by raising same or place a defendant in a quandary as to
whether a defense should be pled or waived.

It is telling that most, if not all, of the cases cited within the 10th Circuit involve
complaints where an amount was not pled or it did not rise to the amount in controversy
requirement.   Here, the Complaint was signed in accordance with Virginia law and
contains specific allegations of damages and a prayer for relief, all of which support the
fact that the jurisdictional amount in controversy is met.   Furthermore, the Plaintiff
attached a Lease and Security Instrument to support its claim for damages.   There is no
authority to support the proposition that the damages must be sustainable, just in

controversy.  Unless there is bad faith on the part of the Plaintiff or that recovery is limited to an amount below the threshold by a legal certainty, then the Complaint along with the exhibits are sufficient to meet the amount in controversy requirement.

## II.     LEGAL RELATIONSHIP BETWEEN CHURCH HILL AND UNITED LEASING CORPORATION

By claiming to be an "affiliate" of United Leasing, Church Hill argues that it had a contractual relationship with MDA.  Accordingly, Church Hill alleges that in August 2008 it "engaged the services of MDA to perform a title search on" the property at issue and that MDA provided a Title Search Report.  (Compl. at ¶¶ 9, 11).  Church Hill, nevertheless, fails to further define its relationship with United Leasing beyond its purported "affiliate" status.  Bearing the burden of proof at trial, Church Hill must prove a relationship—contractual or otherwise—with United Leasing that would entitle it to relief.

Even if such "affiliate" relationship were established, no contract or warranty agreement exists between Church Hill and MDA, and hence there is no privity between these parties.  In essence, Church Hill seeks any protection that MDA may afford to United Leasing under the contract agreement between MDA and United Leasing.[3]   As argued in previously filed pleadings, this assertion is unsupported by law.[4]

## III.    THE CORRESPONDING TERMS AND CONDITIONS OF THE TITLE SEARCH REPORT AND REAL ESTATE SETTLEMENT SERVICES PURCHASE AGREEMENT APPLY TO THE AMOUNT IN CONTROVERSY

Pursuant to this Honorable Court's Order, MDA was asked to limit its discussion on the documents noted below.  In accord with the argument asserted in Section II above, MDA

---

[3] *See, e.g.*, Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss Complaint (Docket No. 3) ("[A]ssuming the Court determines that Church Hill Place can only assert a claim for indemnification under the Real Estate Services Agreement by establishing its liability to a third party, Church Hill Place has in fact incurred liability to a third party on the transaction complained of."

[4] *See generally* Defendant MDA Lending Solutions Inc.'s Memorandum in Support of Its Motion to Dismiss Plaintiff's Complaint (Docket No. 3).

contends that the following documents may be pertinent to the extent that Church Hill can

sustain its burden of proof that it has standing to bring suit.  Subject to and without waiving

argument above, please see below the discussion of the pertinent documents.  As this case

progresses, other documents bear may bear relevance to the amount in controversy.

A.     Title Search Report

The Title Search Report's ("Title Search") terms and conditions apply to the transaction

at issue to the extent that it limits MDA's liability for the services it provided.  *See* Title Report

dated September 2, 2008 (attached as an exhibit for the Notice of Removal (Docket No. 1) and

Exhibit B to Defendant's Memorandum in Support of its Motion to Dismiss (Docket No. 3).

Pursuant to the "Use of the Report" subsection, "(MDA) makes no representation or warranty

concerting its accuracy other than as specifically set forth below.  The Title Search also provides

that "[t]he information in this report does not guarantee the enforceability of your lien."

The limitation of liability provision states, in relevant part:

> MDA's liability for breach of this warranty shall be limited to the
> actual amount of any loss incurred by you, the maximum amount
> allowed by applicable law or $25,000, or that amount as limited by
> your Settlement Services Purchase Agreement, whichever is less,
> unless specifically determined by the Customer's Settlement
> Services Purchase Agreement and is conditioned upon your
> enforcing the promissory note and security instrument to the fullest
> extent provided by law and taking all reasonably steps to protect
> any interest you may acquire in the real property described in this
> report.

*Id.*; *see* Order dated August 3, 2010 (emphasis omitted).   Church Hill claims to have relied on

MDA's title search report in evaluating a lease proposal to finance a business.   Assuming

without conceding this claim, the Title Search's terms and conditions explicitly limits MDA's

liability for damages to third parties, such as Church Hill.

> IN NO EVENT SHALL MDA BE LIABLE FOR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES EVEN IF ADVISED THAT SUCH DAMAGES ARE POSSIBLE OR LIKELY.  This warrant is extended to you as MDA's customer sand is not intended for the benefit of any third party.  MDA's warrant liability will terminate with the transfer, sale or assignment of any loan made by you which relates to the property described in this report, unless MDA agrees in writing to an extension of the warranty.

*Id.* (emphasis in original).

> B.     Real Estate Settlement Services Purchase Agreement

The Real Estate Settlement Services Purchase Agreement ("Settlement Services Agreement") applies to the transaction at issue, by limiting Church Hill's breach of warranty claim.   Real Estate Settlement Services Purchase Agreement (Exhibit A to Defendant's Memorandum in Support of Motion to Dismiss (Docket No. 3)).  As the Order notes, Section 5(d) states that "the only relief and remedy available to a Party for such breach or violation [of any representation, warranty, obligation, agreement or other term set forth in this Agreement] shall be (i) actual damages, but only to the extent properly claimable hereunder, (ii) specific performance if granted by a court of competent jurisdiction; or (iii) injunctive or declaratory relief if granted by a court of competent jurisdiction."  *Id.*; *see also* Order at 3.

The Settlement Services Agreement also contains a definition of the parties to the contract.  Section 9(f) of the Settlement Services Agreement states: "Except for an indemnified Party's directors, officers, employees, affiliates and agents in the context of Section 5, this Agreement is solely for the benefit of the Parties and no provision of this Agreement shall be deemed to confer upon another party any remedy, claim, liability reimbursement, cause of action or other right."  *Id.* The indemnification provision in Section 5 extends to party's directors,

officers, employees, affiliates, and agents.  *Id.*   Thus, the settlement services agreement exists

only between United Leasing and MDA, with the exception of an indemnification provision.


## CONCLUSION

In sum, the Plaintiff's Complaint controls whether the amount in controversy requirement

is met.  The preponderance of the evidence standard is only applicable when no specific amount

is pled, or the amount pled is below the threshold.  Once this burden has been met, then the Court

must find as a matter of "legal certainty" or in other words "legal impossibility of recovery must

be so certain[5]…" that the claim will be below the threshold, the Complaint should remain in

federal court.

Respectfully submitted,


/s/Ronald J. Guillot, Jr.
Ronald J. Guillot, Jr., Esq. (VSB# 72153)
Karen E. Daily, Esq. (VSB# 48210)
SAMUEL I. WHITE, P.C.
5040 Corporate Woods Drive, Suite 120
Virginia Beach, Virginia 23462
(757) 217-9304 (Office)
(757) 497-2802 (Facsimile)
*rguillot@siwpc.com*; kdaily@siwpc.com
*Counsel for Defendant MDA Lending Solutions Inc.*

---

[5] *Wiggins* at 1017

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this <u>23rd</u> day of August 2010, I caused a true copy of the foregoing with attachments to be served via electronic transmission with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

James E. Kane, Esquire
Kane, Papa & Ortiz
1313 East Cary Street
Richmond, Virginia 23219
(804) 225-9500
(804) 225-9598 – facsimile
*Counsel for Plaintiff*

/s/Ronald J. Guillot, Jr.
Ronald J. Guillot, Jr., Esq. (VSB# 72153)
Karen E. Daily, Esq. (VSB# 48210)
SAMUEL I. WHITE, P.C.
5040 Corporate Woods Drive, Suite 120
Virginia Beach, Virginia 23462
(757) 217-9304 (Office)
(757) 497-2802 (Facsimile)
*rguillot@siwpc.com*; kdaily@siwpc.com
*Counsel for Defendant MDA Lending Solutions Inc.*