**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

_____
                                                  )
**CHURCH HILL PLACE INVESTMENTS, LLC,**           )
                                                  )
    **Plaintiff,**              )
                                                  )
    **v.**                       )    **Civil Action No. 3:10CV288**
                                                  )
**MDA LENDING SOLUTIONS, INC.,**                  )
                                                  )
    **Defendant.**               )
_____)

## REPORT AND RECOMMENDATION

    This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on Defendant's Motion to Dismiss for failure to state a cause of action upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). (Docket No. 6.) However, on the basis of Plaintiff's submission of the Affidavit of one Edward H. Shield (docket no. 21, Exhibit 1), the Court granted the parties leave to supplement their submissions in order for the Court to determine whether it would recommend that Defendant's Motion to Dismiss be converted into a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 12(d). (Docket No. 23.)

    The Court concludes that all relevant issues are fully briefed and that oral argument would not aid in the decisional process. Accordingly, the matters are subject to resolution at this juncture. For the reasons set forth herein, it is the Court's recommendation that subject matter jurisdiction, as challenged by Plaintiff, has been sufficiently established, that Defendant's Motion to Dismiss should be converted into a Motion for Summary Judgment, and that such motion should be GRANTED.

# I. BACKGROUND

This matter has arisen as a result of a dispute over a property title search report ("Title Report") that Plaintiff allegedly ordered from Defendant. Plaintiff, Church Hill Place Investments, LLC ("Plaintiff"), has pursued the action against Defendant, MDA Lending Solutions, Inc. ("Defendant"), for breach of warranty and breach of contract. The Complaint was originally filed in the Circuit Court for the City of Richmond, Virginia and subsequently removed to this Court on the basis of diversity jurisdiction.

Plaintiff is engaged in the business of financing small businesses utilizing a lease structure, and purports to be an affiliate of United Leasing Corporation ("ULC"), a Virginia corporation which is not a party to this case. (Complaint ¶¶ 1, 6.) Defendant is a Delaware corporation with a registered office and registered agent located in Richmond, Virginia. (Compl. ¶ 2.)

On or about November 22, 2006, TransUnion Settlement Services, Inc. ("TransUnion"), a predecessor-in-interest to Defendant, entered into a Real Estate Settlement Services Purchase Agreement ("Agreement") with ULC. (Compl. ¶ 23.) In or about August 2008, Plaintiff alleges that it "engaged the services of [Defendant] to perform a title search" on a property in the state of Georgia, which said Title Report Defendant provided on or about September 2, 2008. (Compl. ¶¶ 9, 10.) Plaintiff further alleges that it relied on the Title Report in entering into an equipment lease agreement with a third party, and that a default subsequently occurred under the terms of the lease with the third party lessee. (Compl. ¶¶ 11, 13.) The accelerated balance due under the lease is $1,576,834.01, plus late charges, costs, and attorney fees. (Compl. ¶ 13.) Plaintiff subsequently filed this action claiming breach of contract and breach of warranty regarding

alleged deficiencies in the Title Report. (Compl. ¶¶ 17-25.) Plaintiff further alleges in its breach

of warranty claim that the 2006 Agreement between Defendant and ULC extends to affiliates of

ULC, such as Plaintiff, and therefore Plaintiff is entitled to actual damages pursuant to the

Agreement. (Compl. ¶¶ 23-25.) While Defendant has removed the matter to this court on the

basis of diversity jurisdiction, Plaintiff asserts that Defendant has failed to establish that it has a

good faith belief, as required, that the amount in controversy satisfies jurisdictional

requirements.

Subject to the Court's January 28, 2011 Order, Defendant submitted additional

documentation in support of its motion, setting forth previously undisclosed facts.[1] Defendant

states that as a requirement to obtain the services and/or products it offers, an entity must enter

into a written contract which specifies the services and/or products it wishes to receive. (Def.'s

Supplemental Memorandum for Motion for Summary Judgment ("Def.'s Supp. Mem. II") at 2.)

Further, the Defendant asserts that at no time prior to the initiation of this litigation did Plaintiff

or ULC advise Defendant that ULC intended to order title searches on behalf of Plaintiff. Id. at

4. Finally, Defendant alleges that no contract exists between Plaintiff and Defendant, and that

the contract between ULC and Defendant does not include affiliation language which would

define "Customer" to include affiliates of ULC, such as Plaintiff. Id.

## II.  SUBJECT MATTER JURISDICTION

Defendant bears the burden of establishing federal jurisdiction as the party seeking

---

[1] Defendant included a statement of undisputed facts in its briefing, which was not
objected to or otherwise addressed by Plaintiff. Indeed, Plaintiff submitted no further
documentation in support of its position. Though the Court's ultimate recommendation to grant
Defendant's converted motion is not dependant on such a factual predicate, the Court will
assume that such facts are admitted pursuant to Local Rule 56.

removal to this Court.  See Mulcahey v. Columbia Organic Chems., 29 F.3d 148, 151 (4th Cir. 1994).  While there is complete diversity of citizenship between Plaintiff and Defendant, there remains the issue of whether or not the amount in controversy exceeds $75,000, as also required for federal subject matter jurisdiction.  Plaintiff disputes that federal jurisdiction is proper and requests a remand to the state court, while also alleging at the same time that it is entitled to recover over one million dollars in damages.  (Pl.'s Supplemental Brief ("Pl.'s Supp. Br.") at 3-6.)  Defendant contends that federal jurisdiction is proper, as Plaintiff's Complaint seeks recovery in excess of $75,000.  (Def.'s Supplemental Brief ("Def.'s Supp. Br.") at 1-10.)

When a case is initiated in federal court, the sum sought by the plaintiff controls in matters of dismissal for want of jurisdiction *if* the claim is made in good faith.  St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 238, 288-89 (1938).  To justify dismissal, it must appear to a legal certainty that the claim is for less than the required jurisdictional amount.  Id. Furthermore, for actions initially filed in state court, and subsequently removed to federal court, there is a presumption that the amount in controversy is not sufficient in order to support federal jurisdiction.  Id. at 290-91.

As noted, Plaintiff seeks in excess of one million dollars in damages.  Such a claim appears to rebut the strong presumption that Plaintiff has not claimed a sufficient amount in order to confer jurisdiction on this court.  Because Plaintiff seeks to recover a specific amount of damages, the amount sought should determine jurisdiction, provided that the claim is made in good faith.  Red Cab, 303 U.S. at 288-89; Wiggins v. North American Equitable Life Assurance Co., 644 F.2d 1014, 1016-17 (4th Cir. 1981).  The Court therefore addresses the question of whether or not Plaintiff filed its claim in good faith.

Throughout Plaintiff's numerous filings with the Court, it has repeated its claim that the amount in controversy is the amount originally plead in the Complaint, or $1,576,834.01 in addition to costs, late charges, and attorney fees. Plaintiff has attached supporting documents to the Complaint, including the Title Report which allegedly reveals a contractual relationship between Plaintiff and Defendant, and an Equipment Lease Agreement between Plaintiff and a third party. (Compl., Exhibit A.) It would appear from the documents and related allegations that Plaintiff has filed its claim in good faith. However, Plaintiff objects to the matter being resolved in federal court and requests a remand to the state court.

Plaintiff contends that the case should be resolved in state court because Defendant is acting in bad faith by pursuing removal. Plaintiff argues that because Defendant has asserted a defense that could limit its potential liability to $25,000, the case should be remanded, as Defendant has "failed to meet its burden of establishing federal jurisdiction as it knew prior to its filing for removal herein that the limitation of liability section of the Terms and Conditions of the Title Report could possibly limit its exposure to less than $75,000." (Pl.'s Supp. Br. at 6.)

As noted earlier, to justify remand it must appear to a legal certainty that the claim is for less than the jurisdictional amount. <u>Red Cab</u>, 303 U.S. at 299-89. The "legal impossibly of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim." <u>Wiggins</u>, 644 F.2d at 1017. Here, it is not "legally certain" that Plaintiff's claim is for less than $75,000. The case law cited by Plaintiff and the Court in its August 3, 2010 Order do not support Plaintiff's position regarding remand; such authority instead supports Defendant's contention that the case is properly in federal court. (Pl.'s Supp. Br. at 3-6; Docket No. 16.)

Plaintiff cites <u>Gen. Tech. Applications, Inc. v. Exro LTDA</u> in support of its assertion that

a party's characterization of its claim is not determinative for determining federal jurisdiction, and that any doubt as to whether or not federal jurisdiction exists must result in a remand to state court. 388 F.3d 114, 118 (4th Cir. 2004). However, the cited decision did not address the issue regarding the amount in controversy. Moreover, Plaintiff has not addressed the issue of whether it is "legally certain" that its claim is for less than the jurisdictional requirement, but instead relies on the simple argument that Defendant has acted in bad faith in requesting the removal. (Pl.'s Supp. Br. at 4-6, citing Watson v. Blankenship, 20 F.3d 383, 386-87 (10th Cir. 1994); see Wiggins, 644 F.2d at 1017.) In Watson, the court held that a party must have a good faith belief that the amount in controversy requirement is met. 20 F.3d at 386. As previously noted, Plaintiff argues that should Defendant "prevail on its defense," the amount Plaintiff "may recover could be limited to $25,000.00." (Pl.'s Supp. Br. at 4.) Plaintiff accordingly contends that Defendant acted in bad faith because "it knew prior to its filing for removal herein that the limitation of liability...*could possibly* limit its exposure to less than $75,000." (Pl.'s Supp. Br. at 5-6, emphasis added.)

Interestingly, by asserting that Defendant has acted in bad faith in requesting removal, it could be argued that Plaintiff effectively concedes that its claim was pursued in bad faith by seeking an amount in damages for well in excess of the federal jurisdictional amount, and yet subsequently opposes federal jurisdiction on the issue of the amount in controversy. Stated another way, Plaintiff is requesting well over the federal jurisdictional amount, yet desires that its case be resolved in state court. Such a position is fatally inconsistent. Because Plaintiff has not amended its Complaint, and continues to seek well in excess of the federal jurisdictional amount, the case is properly resolved in federal court.

Such a conclusion is consistent with relevant case law. The Court, in its August 3, 2010 Order, cited <u>Telluride Reg'l Airport Auth. v. Am. Shelter Techn., Inc.</u>, which held that a defendant could not have a good faith belief that the amount in controversy requirement was met when it knew, or should have known, that language in the parties' contract limited the plaintiff's damages to an amount less than the $75,000 requirement. 2010 WL 2507723, at *3 (D. Colo. March 22, 2010). Significantly, the plaintiff in that case had not sought any particular monetary relief, leaving the amount in controversy to speculation. <u>Id.</u> at *2. Further, the defendant had failed to include in its Notice of Removal that there was a provision in the governing contract limiting damages to an amount below the required jurisdictional amount. <u>Id.</u> at *3. Accordingly, the Court noted that the defendant "[c]ould not have it both ways." <u>Id.</u> Here, while Defendant has referred to a warranty provision in the Title Report which *could* limit potential damages to $25,000, such a limitation may be applicable only if the Court determines that Plaintiff was not a party to the Agreement. Plaintiff contends that it is, in fact, a party to the Agreement, which, if correct, could entitle it to damages well over the minimum requirement of $75,000. (Def.'s Mem., Exhibit A ("Agreement"), Section 5(d).) Accordingly, it cannot be concluded to a *legal certainty* that Plaintiff would not be able to recover at least the minimum jurisdictional amount required.

The present case is also distinguishable from <u>Wiggins</u>, in which the Fourth Circuit held that the plaintiff could not recover damages as claimed, and, therefore, the amount in controversy requirement could not be satisfied. 644 F.2d at 1018. In that case, the plaintiff had requested punitive damages based on a breach of contract claim. <u>Id.</u> at 1015-16. In evaluating jurisdiction, the Court noted that "the legal impossibility of recovery must be so certain as virtually to negate

the plaintiff's good faith in asserting the claim." Id. at 1017. The Court also noted that pursuant to relevant Maryland state law, punitive damages are not available in actions only alleging breach of contract claims. Id. Because a portion of the amount in controversy included punitive damages, which by law were unrecoverable, the plaintiff's claim only involved a controversy for less than the required jurisdictional amount. Here, there is no similar bar to recovery on Plaintiff's claims. Instead, at issue is whether or not Plaintiff is "in privity" with Defendant so as to be potentially entitled to the higher amount in damages. Therefore, no certain "legal impossibility of recovery" exists to negate Plaintiff's presumed exercise of good faith in asserting its claims. Accordingly, the Court recommends that the alleged amount in controversy satisfies the jurisdictional requirement, and that the case should not be remanded to the state court.

### III. STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). In reviewing a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. Id. at 255.

Once a motion for summary judgment is properly made and supported, the opposing

party has the burden of showing that a genuine dispute exists.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  Anderson, 477 U.S. at 247-48 (emphasis in original).  Indeed, summary judgment must be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  To defeat an otherwise properly supported motion for summary judgment, the nonmoving party must rely on more than conclusory allegations, "mere speculation," the "building of one inference upon another," the "mere existence of a scintilla of evidence," or the appearance of some "metaphysical doubt" concerning a material fact.  Lewis v. City of Va. Beach Sheriff's Office, 409 F. Supp. 2d 696, 704 (E.D. Va. 2006) (citations omitted).  Of course, the Court cannot weigh the evidence or make credibility determinations in its summary judgment analysis.  Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004).

Furthermore, a "material fact" is one that might affect the outcome of a party's case.  Anderson, 477 U.S. at 247-48; JKC Holding Co. LLC v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001).  Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson, 477 U.S. at 248; see also Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001).  A "genuine" issue concerning a "material" fact only arises when the evidence, viewed in the light most favorable to the non-moving party, is sufficient to allow a reasonable jury to return a verdict in that party's

favor.  <u>Anderson</u>, 477 U.S. at 248.

## IV. ANALYSIS

Defendant argues in its motion that Plaintiff's claims should be dismissed as no privity exists between the two parties.  (Def.'s Mot. to Dismiss and Br. in Supp. Thereof ("Def.'s Mem.") at 3-7.)  Plaintiff responds that it has standing to bring the claims for breach of contract and breach of warranty against Defendant because it is an affiliate of ULC and the terms of the Agreement accordingly apply to Plaintiff.  (Compl. ¶¶ 17-25.)  Specifically, Plaintiff notes Section 5 of the Agreement which provides that each party to the Agreement agrees to indemnify, hold harmless and defend the other party, *including its affiliates*, from and against any and all losses.  (Agreement, Section 5(a), emphasis added.)  Plaintiff also asserts that it engaged the services of Defendant to provide the Title Report which gave rise to the subject claims.  (Compl. ¶ 9.)  Accordingly, Plaintiff asserts that because it engaged the services of Defendant to provide the Title Report, which Defendant did in fact provide, and Plaintiff suffered a loss as a result of the deficient Title Report, Plaintiff has sufficiently alleged privity of contract in order for it to pursue both the breach of contract and breach of warranty claims against Defendant.

### A.      Plaintiff has not established privity with Defendant.

Ordinarily, a  federal court in a diversity case must apply the choice of law rules of the state in which it is located – Virginia in this case.  <u>Erie R.R. v. Tompkins</u>, 304 U.S. 64, 78 (1938); <u>Paul Bus. Sys. v. Canon U.S.A., Inc.</u>, 240 Va,. 337, 397 S.E. 848 (1934).  However, where, as here, parties to a contract have expressly declared that the agreement shall be construed with reference to the law of a particular jurisdiction other than Virginia, Virginia

courts will recognize such agreement and apply the law of the stipulated jurisdiction. Id. The

Agreement's forum selection clause dictates that the laws of the State of Delaware shall apply

and, therefore, Delaware law must apply in this case where applicable. (Agreement, Section

9(g).)

Central to Plaintiff's claims is the Agreement signed by ULC, a non-party to this

litigation, and TransUnion, a predecessor in interest of Defendant. In order to prevail on each of

its breach of contract and breach of warranty claims, Plaintiff must demonstrate that the terms of

the Agreement apply to it. Pursuant to controlling Delaware law, the Court refers to the actual

language of the Agreement to interpret its meaning. O'Brien v. Progressive N. Ins. Co., 785

A.2d 281, 288 (Del. 2001). If an ambiguity is perceived, the Court will then determine if there is

other evidence, beyond the "four corners" of the Agreement, to determine the import of the

subject language of the Agreement. Eagle Indus., Inc. v. DeVilbiss Health Care, Inc., 702 A.2d

1228, 1232 (Del. 1997); O'Brien, 785 A.2d at 288-89. Moreover, ULC and Defendant

specifically agreed in the document that there would be no presumption applied against the

drafter of the Agreement if an ambiguity was determined to exist. (Agreement Section 9(d).)

Accordingly, the Court will review and analyze the plain language of the Agreement to interpret

the parties' intentions.

The Agreement defines the parties as ULC and TransUnion, a predecessor in interest to

Defendant. (Agreement at 1.) In the initial definition, "affiliates" are not identified or otherwise

mentioned. However, "affiliates" are mentioned in Section 5 of the Agreement, which is the

indemnification proviso. In Hudson v. D&V Mason Contractors, Inc., a contract dispute arose as

to the language "as herein provided," a phrase which the defendant argued relieved it from

performing under the contract. 252 A.2d 166, 168 (Del. Super. Ct. 1969). The court disagreed,

holding that the "use of the phrase 'as herein provided' calls special attention to the cardinal rule

that one paragraph in a contract [] cannot be read in isolation, but must be read within the

context of the entire instrument." Id. at 168. Applying such a rule to the present case, the

Agreement does not apply all terms and conditions to the affiliates of the signing parties. Rather,

the affiliates of the parties only have remedies pursuant to the indemnification proviso. Such a

conclusion follows from that fact that the word "affiliates" appears only in Section 5, the

indemnification proviso, and Section 9(f), which states that "[e]xcept for an Indemnified Party's

directors, officers, employees, affiliates and agents *in the context of Section 5*, this Agreement is

solely for the benefit of the Parties and *no provision of this Agreement shall be deemed to confer*

*upon another party any remedy, claim, liability, reimbursement, cause of action or other right*."

(Agreement, Section 9(f), emphasis added.)

　　　Though the Agreement explicitly states that its terms are only applicable to the parties

(but for the indemnification proviso), Plaintiff seemingly argues that *all* terms of the Agreement

equally apply to affiliates of the parties. The contention is not supported by the plain language

of the Agreement. The argument is also contrary to the general principle that a non-signing

party cannot be bound to a contract. See Oliver v. Omega Protein, Inc., No. 3:10cv47, 2010 U.S.

Dist. LEXIS 120294, at *7-9 (E.D. Va. Oct. 21, 2010) (citing B-G & G Investors VI, LLC v.

Thibaut HG Corp., 985 So.2d 837, 842 (La. Ct. App. 2008)); see also Westerngeco, LLC v.

Input/Output, Inc., 246 S.W.3d 776, 786 (Tex. App. 2008). The Agreement was signed by ULC,

a non-party in the present case, and TransUnion, a predecessor in interest to Defendant. Plaintiff

was never identified or otherwise mentioned in the Agreement; nor did it sign the Agreement.

Accordingly, Plaintiff cannot be considered a party to the contract.[2]  Moreover, it is difficult to

hold that Plaintiff was a party to the Agreement, as the entity did not exist at the time the

Agreement was signed.  The Agreement was signed in 2006, and Plaintiff was not formed and

established until 2008.  (Pl.'s Doc. in Supp. of its Affiliation ("Pl.'s Doc."), Exhibits 1, 5, and 9.)

 Furthermore, even if an ambiguity existed with regards to "affiliates," Defendant has

provided evidence that it executes different contracts with entities that have affiliates.  (Def.'s

Supp. Mem. II, Affidavit of Lisa Stratton, ("Stratton Aff.") ¶ 10.)  Defendant asserts that it has

contract language specifically targeted to companies that have affiliations, and that it specifically

inquired into ULC's affiliations before executing the contract with ULC in 2006.  Id. at ¶¶ 10,

22.  Had it known at the time of the contract's execution, or anytime thereafter, Defendant argues

that the contract would have been negotiated to include a broader definition of the "Customer."

Id.  However, because Defendant was not aware of Plaintiff's existence prior to this lawsuit, the

contract's original definition of "Customer" remained in effect and did not extend to affiliates.

Id.  In the alternative, a new contract could have been negotiated between Plaintiff and

Defendant, but no such action was taken which would render Plaintiff a "customer" of

Defendant.  Id. at ¶¶ 21-22.

 Because Plaintiff is not a party to the Agreement, and is not otherwise included within its

scope, it does not have privity with Defendant.  Accordingly, the Court recommends that

---

[2] The Court does not imply that a non-party to a contract can never be bound by a
contract.  A contract can be enforced by or against a non-party in several ways, including
"through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-
party beneficiary theories, waiver and estoppel.'"  Arthur Anderson LLP v. Carlisle, 129 S. Ct.
1896, 1902 (U.S. 2009) (quoting 21 R. Lord, Williston on Contracts § 57:19, p 183 (4th ed.
2001)).  However, no such claim has been asserted in this case.

Defendant's motion must be granted. Plaintiff's contention that it, and not ULC, ordered the Title Report cannot establish privity with Defendant. Furthermore, Plaintiff offers no support, other than a subsequent lease agreement between Plaintiff and a third party, for its assertion that it was Plaintiff, and not ULC, that ordered the Title Report which gave rise to its claim. Even taking Plaintiff's claims as true, that it was the entity that ordered the Title Report, it still has not established privity with Defendant as it was not a "customer" of Defendant.

Though Plaintiff claims that Tia Wiggins, an employee and agent of ULC, acted on Plaintiff's behalf in ordering the Title Report, such a contention is not plausibly supported, nor pled in the Complaint.[3] Tia Wiggins may have ordered the Title Report, but it is not alleged that she specified which company she ordered it for. However, even if Plaintiff could ultimately prove that Tia Wiggins acted on behalf of Plaintiff, the fact remains that Plaintiff was not in privity of contract with Defendant. Indeed, the language of the warranty in the Title Report specifies that it is only applicable to the "*customer and is not intended for the benefit of any third party*." (Def.'s Mem., Exhibit A, Title Report, emphasis added.) The Title Report is a product of the services Agreement between Defendant and ULC.[4] ULC is defined in the opening paragraph of the Agreement as the "Customer," and its agent executed the Agreement as the

---

[3] The Court notes that Tia Wiggins, who identified herself as the Document Manager for ULC, signed the 2006 Agreement on behalf of ULC – not Plaintiff.

[4] It is also worthy of note that the services ULC contracted with Defendant for did not include commercial products. (Stratton Aff. ¶ 12.) Defendant notes this important distinction, as title commitments are insured products and Defendant only provided for uninsured products. Id. at ¶ 13. Defendant also states that it was not advised that ULC would be relying upon the results of products and/or services provided in connection with extending financial loans to small businesses. Id. at ¶ 14.) Further, ULC did not request underlying documentation to support the title search at issue. Id. at ¶¶ 18-19.

"Customer." (Agreement at 1, 3.) A plain reading of the Agreement and Title Report therefore results in the Court's conclusion that the warranty is only applicable to ULC, the "Customer," and that the warranty does not apply to Plaintiff, which is a third party.

Furthermore, it does not appear that Plaintiff even existed at the time the first Title Report was ordered, allegedly by Plaintiff. Documents submitted by Plaintiff, per Court Order, reveal that Plaintiff was formed and established on September 8, 2008. (Pl.'s Doc., Exhibits 1, 5, and 9.) The Title Report, which gives rise to Plaintiff's claims, states that its "effective date" was August 9, 2008, and the "report date" is listed as September 2, 2008, both dates preceding Plaintiff's formation date.

Because Plaintiff has failed to establish privity with Defendant pursuant to the Agreement, it is recommended that Defendant's motion be converted into one seeking summary judgment, and that the converted motion be granted. Plaintiff relies on nothing more than conclusory allegations and "mere speculation," and such is not sufficient to defeat a properly supported motion for summary judgment. Anderson, 477 U.S. at 247-48; Lewis, 409 F. Supp. 2d at 704.

**B.      Possible indemnification claim.**

Plaintiff has not alleged a claim for indemnification in its pending Complaint, although it has addressed the issue of the indemnification proviso of the Agreement in support of its position regarding the present motion. Though Plaintiff has been afforded ample opportunity to amend its pleadings, or to expand upon an indemnification theory, it has chosen not to do so. Accordingly, there is no genuine issue of material fact precluding the granting of Defendant's motion.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that the "amount in controversy" requirement for subject matter jurisdiction in this Court has been satisfied, that Defendant's Motion to Dismiss (docket no. 6) be converted into a motion for summary judgment, and that such converted motion be GRANTED.

Let the Clerk forward a copy of this Report and Recommendation to the assigned trial judge and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____/s/_____
DENNIS W. DOHNAL
UNITED STATES MAGISTRATE JUDGE

Date: February 25, 2011
Richmond, Virginia